Pesante Martínez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Mediante el presente recurso de apelación comparecen ante nos los demandados-apelantes, Isla Petroleum Corporation y otros, solicitando la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan. La sentencia aludida declaró con lugar una demanda por incumplimiento de contrato más daños y perjuicios al resolver que los demandados incumplieron una promesa de construir unas mejoras en el negocio del demandante.
El 25 de septiembre de 1991 José L. Figueroa (padre) y Brian y Mónica Figueroa (hijos) presentaron demanda-contra Isla Petroleum Corporation alegando-que éstos incumplieron-una promesa de construir una tienda de conveniencia, así como también le imputaron incumplir con la promesa de remodelar una estación de gasolina propiedad de José L. Figueroa. Adujeron que a consecuencia del incumplimiento de dichas promesas experimentaron grandes pérdidas económicas y sufrimientos mentales. Figueroa alegó que Isla Petroleum Corporation sabía que la razón principal para comprar la plusvalía de la estación era la promesa.de construir la tienda de conveniencia. Lo anterior por razón de que ésta aumentaría sustancialmente las ventas de gasolina y mercancía y, por ende, generaría un incremento en las ganancias.
En respuesta, la demandada Isla Petroleum Corporation sostuvo que no intervino en la negociación del demandante con el dueño de la estación en la adquisición de la estación de gasolina; que el demandante pagó a sobreprecio la estación y no realizó los estudios de mercadeo y los análisis sugeridos para este tipo de transacción; que la remodelación de la estación y la construcción de la tienda de conveniencia las llevaría a cabo la demandada conforme al tumo que le correspondía y sujeto todo a la disponibilidad de fondos; que el demandante incumplió con los términos y condiciones de los contratos suscritos (contrato de arrendamiento, de venta y suministro de gasolina y *1262 comodato) y que la pérdida de ingresos y daños se debe a la negligencia y a causas atribuibles únicamente al demandado.
Además, la demandada reconvino alegando que el demandante se obligó por contrato a adquirir 40,000 galones de gasolina mensuales y que éste durante el tiempo que operó la estación dejó de adquirir 152,610 galones de gasolina, por lo que la demandada dejó de obtener ganancias ascendentes a $67,015.00. Asimismo, adujo que el demandante le adeudada por concepto de sub-arrendamiento del contrato la suma de $13,610.00. A tales efectos, los demandados instaron una acción de desahucio y el demandante, como resultado de las negociaciones, se vio obligado a entregar la estación. Posteriormente, la demandada vendió la plusvalía de la estación a un tercero en $45,000.00. Trabada la controversia, el Tribunal de Primera Instancia celebró el juicio. Evaluados los planteamientos de los litigantes, aquilatada la prueba presentada y adjudicada la credibilidad, el tribunal a quo formuló las siguientes determinaciones de hechos, las cuales adoptamos y hacemos parte de esta sentencia, a saber:

"1. Allá para fines del año 1989 don José L. Figueroa había estado analizando la posibilidad de buscar fuentes adicionales para incrementar sus ingresos y se interesó en adquirir una estación de gasolina. Para obtener asesoramiento en el negocio, ya que él no tenía experiencia en dicho rama, se comunicó con un amigo suyo de muchos años, el Sr. Efraín Reyes, quien se dedicaba a ese tipo de negocios desde hacía muchos años, inclusive había sido presidente de la Asociación de Detallistas de Gasolina.

2. El Sr. Reyes le informó al demandante que él tenía conocimiento de una estación de gasolina Isla, en la Calle Paraná de la Urb. El Paraíso, en Río Piedras, cuyo dueño, el Sr. César Rodríguez, estaba interesado en venderla.

3. Figueroa visitó la estación de la Calle Paraná, la cual tenía 2 bombas de gasolina con 8 pisteros, una cabina donde se cobraba la gasolina y se vendía leche, refrescos, cigarrillos, aceites y otros productos, así como una nave. La estación no tenía pino, pero tenía una fosa donde se hacía labor de mecánica. El señor Rodríguez le pidió al demandante $125,000.99 por la llave de la estación.

4. Al enterarse de lo que pedía el señor Rodríguez, el señor Reyes le indicó al señor Figueroa que le parecía caro, pero que de cualquier forma sería bueno hablar con Isla Petroleum Corporation (en adelante Isla). Entonces el señor Reyes llamó a Benjamín Martínez, Gerente de Ventas de Isla, y le pidió una cita para presentarle al señor Figueroa.

5. En la reunión mencionada, el Sr. Benjamín Martínez manifestó que no estaba a gusto con el detallista que operaba la estación y que el galonaje que se vendía en la misma (entre 20 y 25 mil galones mensuales) era muy bajo y no le producía beneficios. El señor Martínez le indicó que tenían proyectado hacerle una remodelación a la estación, que incluiría una tienda de conveniencia "Big John", pero que no querían hacer inversiones estando el señor Rodríguez. Le manifestó que, de hacerse la remodelación, era usual que el galonaje subiera entre 75,000 o 80,000 galones mensuales y que la tienda "Big John" podría tener un ingreso promedio mensual de $40,000.00 en ventas. (Ennegrecido nuestro).

6. Luego de la primera reunión con el Sr. Benjamín Martínez, el demandante continuó negociando con el Sr. César Rodríguez la adquisición de la "llave" de la estación, y a esos efectos visitó en varias ocasiones la estación de la Calle Paraná. En una de dichas visitas fue acompañado por su contable, el Contador Público Autorizado Luis Figueroa Vega. El señor Rodríguez le mostró al contable las ventas de la estación para el año 1988 y le informó sobre los gastos de luz, agua, ventas de misceláneos y otros pormenores de la estación.

7.El CP A Figueroa Vega también participó en una reunión con el señor Figueroa y Benjamín Martínez en el Caparra Country Club, en la cual Martínez reiteró la promesa de Isla de hacer remodelación, incluyendo la tienda "Big John", si el señor Figueroa adquiría la "llave”. (Ennegrecido nuestro).

*1263 8.Otra persona que participó en las negociaciones iniciales entre el demandante e Isla lo fue el Lie. Luis Dubón, III. Este participó en una. reunión en las oficinas de Isla, en la que estuvieron presentes el Sr. Benjamín Martínez1, el Sr. José L. Figueroa, el C.P.A. Luis Figueroa y■ él. En dicha reunión nuevamente se manifestó la intención de Isla de hacer la remodelación en la estación que iba a comprar el señor Figueroa, la cual incluiría una tienda "Big John”. Además se mencionó que el precio que iba a pagar Figueroa para adquirir la "llave" era un poquito alto. (Ennegrecido nuestro).

9.Finalmente, el señor Figueroa llegó a un acuerdo verbal con el Sr. César Rodríguez para comprar la estación por un precio de $100,000.00. Para financiar la compraventa, el demandante solicitó un préstamo al Banco Santander, el cual le fue concedido, luego de que el día 26 de febrero de 1990 Isla envió a dicho Banco una comunicación informándole que:

"A solicitud del Sr. José Figueroa, le informo que es parte de los planes de nuestra compañía ISLA PETROLEUM CORPORATION el realizar ciertas mejoras a la estación de gasolina ubicada en la Calle Paraná en Río Piedras.

Las mejoras a realizarse incluyen la construcción de una tienda de conveniencia equipada de la franquicia "Big John". Dichas mejoras están programadas para el tercer trimestre del año en curso y estarán sujetas a la disponibilidad de los recursos económicos a esos efectos". (Subrayado nuestro). (Ennegrecido nuestro).

10.Para obtener el préstamo del Banco Santander, el señor Figueroa tuvo que obtener tasaciones de las tres propiedades hipotecadas en garantía de dicho préstamo.

11. Para garantizar el pago de dicha obligación los demandantes otorgaron tres contratos de prenda con el Banco Santander, mediante los cuales entregaron en prenda tres pagarés garantizados por hipoteca sobre distintos bienes inmuebles de su propiedad. (Ennegrecido nuestro).

12. El señor Figueroa y sus hijos Brian y Mónica entregaron en prenda al Banco Santander otro pagaré por la cantidad de $58,000.00 de principal, el cual fue garantizado con una hipoteca sobre una residencia en la Calle Dalia Núm. 1623, Urb. Round Hill, Trujillo Alto, Puerto Rico. Dicha residencia es propiedad de los tres demandantes y reside en ella doña Mónica Figueroa. La residencia fue valuada en $75,000.00 al 25 de octubre de 1993, según la tasación del señor McCloskey.

13. El día 23 de mayo de 1990 se efectuó la compraventa de la "llave" de la estación, por la cual Figueroa le pagó a César Rodríguez la cantidad de $100,000.00, más una cantidad entre $7,000.00 y $8,000.00 por el equipo e inventario que se encontraba en la estación.

14. Al momento de comprar la plusvalía de la estación de gasolina, el señor Figueroa estaba consciente de que estaba pagando un poco más de lo que realmente valía la misma, pero hizo el negocio en atención a la promesa de que se iba a hacer la remodelación■ del garaje y se iba a - construir la tienda de conveniencia en un tiempo relativamente corto, ya que tanto él como la demandada anticipaban que dichas mejoras iba a aumentar sustancialmente los ingresos de la estación. (Ennegrecido nuestro).

15. A pesar de que el demandante Figueroa no tenía experiencia previa como detallista de gasolina, de que sabía que la venta de gasolina -de la estación cuando adquirió la misma fluctuaba entre 20 a 25 mil galones al mes y de que la promesa de conveniencia tomaría meses, se comprometió en el contrato de compra y suministros a adquirir de la demandada un mínimo de: 40,000 galones de gasolina al mes. (Ennegrecido nuestro).

16. Figueroa y Martínez hablaron por teléfono y Martínez le indicó que el proyecto estaba supuesto a comenzar a principios de abril de 1991 y que le enviaría un borrador del contrato para la tienda de conveniencia para su revisión.

17. Luego de esto comenzaron las negociaciones para la firma de un contrato relativo a la 
*1264
operación de la tienda de conveniencia Big John. En esta negociación el señor Figueroa estuvo representado por el Lie. Dubón, III, e Isla Petroleum por el Lie. Emilio Cando Bello. Al señor Figueroa le mostraron el permiso de construcción para la remodelación de la estación de gasolina, así como los planos aprobados.

18.Luego de varias negociaciones y de varios borradores de contratos, Figueroa y los demandados acordaron un borrador final del contrato para el establecimiento de la tienda de conveniencia "Big John", en el cual las partes lo serían el señor Figueroa y Gasolinas de Puerto Rico. (Ennegrecido nuestro)

19. Se acordó que la firma de los contratos tendría lugar el 8 de julio de 1991, a las 3:00 de la tarde, en las facilidades de Isla. Ese día Figueroa invitó al Lie. Dubón III a almorzar en el Caparra Country Club. Mientras, habían llamado de Isla para decirle que la reunión estaba cancelada. Entonces el demandante llamó al Sr. Benjamín Martínez y éste le informó que no se podía hacer la remodelación, porque se habían acabado los fondos. (Ennegrecido nuestro).

20. Dado que no podía sufragar los gastos de la estación y no podía pagar el préstamo del Banco Santander, allá para febrero o marzo de 1992 cesó las operaciones y entregó la estación Isla.

21. El 29 de mayo de 1992, Figueroa e Isla (representada por el Sr. Rafael Toro) firmaron un documento dando por terminados y rescindidos los contratos entre las partes.

22.Al señor Figueroa le habían prometido que cuando se encaminara el proyecto de la construcción de la tienda "Big John", se le condonaría la renta por algún tiempo. (Ennegrecido nuestro).

23. Posteriormente, Isla le vendió la "llave" de la estación al Sr. José Hernández por la suma de $45,000.00. De esa suma no se le pagó nada al señor Figueroa.

24. El 16 de noviembre de 1994 el Tribunal Superior de Bayamón dictó sentencia en el caso de Banco Santander (Santander National Bank v. José L. Figueroa, t/c/c/ José L. Figueroa González y José Lázaro Figueroa González, Mónica Figueroa Ramos y Brian Joseph Figueroa Ramos, civil número DCD-930040). En dicha sentencia se condena a la parte demandada a pagar a la demandante la suma principal de $125,000.00, más intereses sobre dicha suma.

25. Debido a toda la situación por la que ha atravesado y al fracaso en el incipiente negocio, el señor Figueroa ha sufrido grandemente y ha pasado humillaciones con sus amistades, en su trabajo, con sus hijos y ha visto como su crédito se ha visto afectado; inclusive se le denegó un préstamo de $18,000.00 por el Banco Popular, pero no sabe las razones. En adición, le ha causado gran preocupación el que vaya a perder las propiedades hipotecadas con el Banco Santander, en una de las cuales vive él y en otra su hija Mónica.

26. Las partes han estipulado que para 1990 Isla Petroleum y Gasolinas de Puerto Rico eran ambas subsidiarias de USA Petroleum Corporation. (Ennegrecido nuestro).

27. Para adquirir la estación de gasolina el demandante, no hizo un estudio formal de mercadeo ni visitó ninguna agencia del Estado, ni Municipal, ni a la Asociación de Detallistas de Gasolina, ni a ninguno de sus peritos, no hizo un estudio del flujo del tránsito frente a la estación, no investigó el volumen de venta de gasolina de las estaciones vecinas; no solicitó los informes financieros de la estación. (Ennegrecido nuestro).

28. Los co-demandantes Brian y Mónica Figueroa Ramos no participaron en la negociación con Isla ni firmaron ningún documento ni contrato con dicha corporación.

29. El área donde ubicaba la estación de gasolina adquirida por el demandante estaba sujeta a una fuerte competencia de otras gasolineras. Esto era de conocimiento del demandante antes de adquirir la estación. Asimismo, la tienda de conveniencia que se proyectaba construir también iba a estar sujeta a la fuerte competencia que ofrecían una multiplicidad de tiendas que vendían 
*1265
mercancías similares.

30. Conforme a la prueba presentada por la parte demandada, cuando José Figueroa cierra la estación le adeudaba a Isla por concepto de renta la suma de $13,610.00; pues mientras el demandante operó la estación no pagó renta. (Ennegrecido nuestro).

31. Durante el año 1990 el demandante dejó de adquirir 152,610 galones de gasolina, conforme al contrato de venta y suministro, con cuya deficiencia privó a Isla de ganarse $19,827.00. Asimismo, durante el año 1991, el demandante dejó de adquirir 287,500 galones de gasolina, por lo que Isla dejó de ganarse $31,408.00. Igualmente, de enero a mayo de 1992, el demandante dejó de adquirir galones de gasolina, dejando Isla de ganarse $15,780.00. (Ennegrecido nuestro).

32. Al demandante Figueroa, Isla le dio una concesión de renta de junio a noviembre de 1990, a razón de $500.00 mensuales." (Ennegrecido nuestro).
Ante las determinaciones de hechos que anteceden, el Tribunal resolvió que la razón ofrecida por Isla Petroleum Corporation para retirarse de las negociaciones no estuvo justificada y estaba maculada de mala fe. Este entendió que los hechos particulares del caso reflejaban claramente que el demandante compró descansando en lá promesa de mejoras que le hicieron los demandados.
Por otro lado, el Tribunal resolvió que el demandante conocía que las aludidas mejoras se tardarían en comenzar a realizarse por lo menos nueve meses, por lo que éste no puede imputarle a la demandada las pérdidas o ingresos dejados de percibir durante dicho período.
Cónsono con lo anterior, el Tribunal condenó a la demandada a pagar $38,664.54 por concepto de pérdidas en la operación de la estación de gasolina para el año 1991. No reconoció las partidas reclamadas por pérdidas en la operación de la estación para el año 1990 ni reconoció las partidas reclamadas por la sentencia recaída en su contra en el caso civil de cobro de dinero y ejecución de hipoteca. Fundamentó tal determinación en el hecho de que la demandante estaba consciente de que las mejoras estaban programadas para el tercer trimestre del año 1990. Es decir, que el Tribunal determinó que el demandante asumió los riesgos de la operación del negocio durante dicho período y no podía atribuirle a la demandada los problemas que éste confrontó. Más aún, la demanda en cobro de dinero y ejecución de hipoteca se presentó y dictó durante dicho período, razón por la cual tampoco podía culpar a los demandados por la pérdida sufrida.
También se condenó a la demandada a pagar $10,000 por concepto de pérdida del crédito del señor Figueroa; $15,000.00 por concepto de daños y sufrimientos mentales al señor Figueroa; $5,000.00 a cada uno de los co-demandantes Brian Figueroa Ramos y Ménica Figueroa Ramos, por concepto de sufrimientos y angustias mentales y $45,000.00 al señor Figueroa correspondientes a la venta de la llave de la estación.
De igual manera, el Tribunal declaró con lugar la reconvención y condenó a los demandantes al pago de $13,110.00 por concepto de renta dejada de pagar y $19,827.00 por concepto de gasolina dejada de adquirir a los demandados durante el año 1990. Se aplicó la modalidad de la compensación a la extinción de las obligaciones. Ello resultó en la obligación de la demandada de pagar a la parte demandante $75,725.54 más intereses sobre esa partida a razón del diez por ciento (10.00%) anual, a partir de la fecha de emisión de dicha sentencia más las costas del procedimiento.
Inconforme con tal determinación Isla Petroleum Corporation apela ante nos alegando que:

"I. Erró el Tribunal al no determinar y concluir que el demandante: incumplió el contrato suscrito con la demandada, al no haber operado personalmente la estación de gasolina en cuestión; y al no haber determinado y concluido que las pérdidas sufridas por el demandante se debieron a este incumplimiento, a su negligencia y a nada más.

II. Erró el Tribunal al no haberle concedido indemnización alguna a Isla Petroleum Corporation, por las pérdidas sufridas durante los años de 1991 a 1992, debido al incumplimiento contractual del demandante, a pesar de que el demandante ocupó y operó la estación de gasolina en virtud de los 
*1266
contratos vigentes entre las partes, hasta mayo de 1992.

III. Erró el Tribunal al haberle concedido al co-demandante José L. Figueroa una indemnización de $10,000.00 por alegada perdida de su crédito, en ausencia de prueba alguna sobre dicho extremo.

IV. Erró el Tribunal al haberle concedido al co-demandante José L. Figueroa una indemnización de $5,000.00 a los co-demandantes Bryan y Ménica Figueroa, a pesar de no haber habido relación contractual alguna entre dichos co-demandantes y los co-demandados. En la alternativa, la indemnización concedida se hizo en ausencia total de prueba suficiente y robusta sobre dichos daños. Debió desestimar por prescripción.

V.Erró el Tribunal de Instancia al resolver que la demandada había actuado negligente y dolosamente al romper las negociaciones sobre el contrato de tienda de conveniencia, máxime, cuando la prueba presentada estableció que se estaba negociando con Gasolinas de Puerto Rico Corporation, corporación separada y distinta de Isla Petroleum Corporation, corporación que no es parte en este pleito."

Evaluada la voluminosa transcripción de la prueba oral y los documentos obrantes en autos, procedemos a resolver.
II
El apelante alega en los señalamientos numerados I y II que erró el Tribunal al concluir que el demandado era responsable por las pérdidas sufridas por el demandante durante los años 1991 a 1992 y que el demandante no tiene que responder por incumplimiento de contrato. No le asiste la razón.
De la transcripción de la prueba y determinaciones de hechos del Tribunal no surgen hechos tendentes a demostrar que el señor Figueroa no operara personalmente la estación de gasolina. Por otro lado, del testimonio no contradicho del señor Figueroa surge que éste trabajaba a tiempo completo en el Caparra Country Club, pero que tenía flexibilidad de horario. Por tanto, no podemos llegar a la conclusión a que llegó la demandada de que el señor Figueroa jamás estuvo al frente del negocio y que delegó en sus hijos la administración de la estación en contravención a los dispuesto en el contrato. En ausencia de error manifiesto, prejuicio o parcialidad este tribunal apelativo no intervendrá en la apreciación de la prueba hecha por el Tribunal de Instancia. Méndez de Rodríguez v. Morales Molina, _ D.P.R. _ (1996), op. de 15 de noviembre de 1996, 96 J.T.S. 149, pág. 347; Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987).
Del mismo modo, se desprende de la prueba presentada que la demandada estaba consciente de que el señor Figueroa no compraría la plusvalía de la estación de haber sabido que la promesa de remodelación y construcción de la tienda de conveniencia no se realizaría. Este se comprometió a comprar 40,000 galones de gasolina mensualmente porque confió en la promesa de la demandada e hizo proyecciones tomando en consideración el alegado aumento en el consumo de gasolina que traería la tienda de conveniencia y la remodelación.
En Prods. Tommy Muñiz v. Copan, 113 D.P.R. 517, 526 (1982), el Tribunal Supremo recalcó que las personas que entran en un proceso de negociación no están obligadas a continuar con las negociaciones hasta perfeccionar el contrato. Ahora bien, si una de las partes se retira de las negociaciones sin justificación dicha actitud podría dar base a una reclamación por daños extracontractuales. Véase, también, Vilá & Hnos., Inc. v. Owens Ill. de P.R., 117 D.P.R. 825, 835-836 (1986).
El Art. 1802 del Código Civil de Puerto Rico de 1979, 31 L.P.R.A. see. 5141, sanciona el ejercicio de un derecho cuando éste se ha ejercido de una forma abusiva. Ibid, pág. 528. Véase, a manera de ilustración, Borg Warner International Corp. v. Quasar Company, _ D.P.R. _ (1995), op. de 14 de marzo de 1995, 95 J.T.S. 30; Arthur Young & Company v. Virgilio Vega III, _ D.P.R. _ (1994), op. 24 de mayo de 1994, 94 J.T.S 75.
La buena fe... impone a las partes que tratan o negocian, un arquetipo de conducta social, lealtad y fidelidad a la palabra dada...y consiste en que cada parte de la relación precontractual se entreg[ue] *1267 confiadamente a la conducta leal de la otra. Prods. Tommy Muñiz v. COPAN, supra, pág. 528.
La prueba demostró que una vez adquirió el demandante la‘estación, la demandada estuvo posponiendo, "a cuenta gotas", la remodelación y construcción de la tienda de conveniencia. No es hasta que se consuman numerosos trámites y gestiones que ésta le informó que carecía de fondos para hacer las mejoras acordadas.
Cabe señalar, que el Tribunal de Primera Instancia acertadamente responsabilizó a la demandada por las pérdidas incurridas a partir de 1991 al resolver que antes de esa fecha no se había incumplido ninguna promesa. Surge de las determinaciones de hechos que el demandado se había comprometido a hacer la remodelación durante el tercer trimestre del año 1990. Razón por la cual, el demandado sólo debe responder de las pérdidas en venta de gasolina vencido el término para cumplir su promesa de remodelación.
El Tribunal no reconoció las partidas reclamadas por el demandante por concepto de los gastos incurridos en el pleito de ejecución de hipoteca. El demandante debió anticipar los problemas que confrontaría al aceptar comprometerse a comprar más galones de los que podía vender durante los primeros meses de operación. Los hechos que dieron base a dicha reclamación son imputables a circunstancias ajenas al control de la demandada. La demandada no estaba obligada en esos momentos a cumplir con la promesa dada; su obligación era a partir del tercer trimestre de 1990; es por ello, que la pérdida sufrida es exclusivamente atribuible al demandante. En consecuencia, éste tiene que asumir las pérdidas que sus propios actos o negligencia ocasionaron. De igual manera, y por los mismos fundamentos, el demandante estaba obligado a responder por la renta dejada de pagar y la gasolina dejada de adquirir durante el año 1990. Asimismo, las partidas reclamadas en la reconvención por incumplimiento de contrato, al no cumplir el demandante en comprar la cantidad de galones acordados para 1991-1992, no proceden por razón de que para esta fecha ya debían haber realizado las mejoras. Por tanto, el incumplimiento del demandante está vinculado al incumplimiento de la demandada.
La excepción de contrato no cumplido, norma fundamentada en la simultaniedad y reciprocidad de las obligaciones, establece que ninguna parte puede exigir el cumplimiento de una obligación contraria sin antes cumplir o intentar cumplir su propia obligación. La modalidad de exceptio non rite adimpleti contratas, por su parte, es oponible al demandante que ejecuta su prestación, aunque en forma parcial o defectuosa. Bajo ésta se autoriza al demandado a detraer de su presentación el importe de lo no realizado o a reducirla en atención a lo llevado a cabo defectuosamente. Diez-Picazo, op. cit., pág. 227. Martínez v. Colón Franco, Concepción, 125 D.P.R. 15, 33 (1993).
En el caso de marras, la demandante dejó de pagar la renta y adquirir los 40,000 galones de gasolina acordados porque la demandada incumplió su promesa de construir la tienda y hacer la remodelación. En estas circunstancias, la demandada no puede exigir el cumplimiento de lo acordado. Véase, a manera de ilustración, Mora Dev. Corp. v. Sandín, 118 D.P.R. 733, 742 (1987).
En el tercer señalamiento de error, los demandados arguyen que no existe prueba sobre la pérdida de crédito del señor Figueroa por lo que no procedía la concesión de daños por dicha partida. No obstante, surge de la prueba presentada que el demandante ha perdido su crédito con el Banco Santander y que solicitó un préstamo al Banco Popular de Puerto Rico y le fue denegado. También, el señor Figueroa fue demandado por la firma de E.S.B. General Battery Company por el cobro de unas baterías que el garaje adeudaba por lo que tuvo que llegar a un "Acuerdo de Pago y Sentencia por Estipulación". Nótese, que el Tribunal no concedió la totalidad de la reclamación montante a $18,000.00; más bien, éste sopesó la prueba presentada y redujo la partida por pérdida de crédito a $10,000.00. Como mencionáramos anteriormente, en ausencia de error manifiesto, prejuicio o parcialidad, este tribunal apelativo no intervendrá en la apreciación de la prueba hecha por el Tribunal de Instancia. Méndez de Rodríguez v. Morales Molina, supra; Rivera Pérez v. Cruz Corchado, supra.
Por otro lado, la indemnización de 5,000.00 concedida a los co-demandantes Brian y Mónica Figueroa por el alegado incumplimiento contractual y los consiguientes daños no tiene fundamento en derecho.
*1268 En Santiago Nieves v. A.C.A.A., 119 D.P.R. 711 (1987), se dispuso que las acciones derivadas de un contrato pretenden que se les de cumplimiento a las promesas contraídas por las partes. Por el contrario, la acciones derivadas del Art. 1802 tienen por objeto que los daños acaecidos por la culpa o negligencia en el cumplimiento de un deber impuesto en ley sean resarcidos. Por tanto, la responsabilidad extracontractual que surge del Art. 1802 "no nace de la voluntad de las partes sino del incumplimiento de un deber impuesto por la ley." Ibid, pág. 716.
En el caso de marras, no existe ninguna obligación contractual entre los demandados y los co-demandantes. Es por ello, que sería improcedente la concesión de daños por incumplimiento de contrato. Tampoco existe un nexo causal entre los alegados daños y sufrimientos mentales de los co-demandantes y la culpa y negligencia de la demandada. Por consiguiente, eliminamos la partida concedida a los co-demandantes por concepto de daños y sufrimientos mentales.
En relación a la alegada prescripción de la reclamación de daños por sufrimientos y angustias mentales concedida al señor Figueroa, disponemos que la misma es improcedente. El Art. 1868 del Código Civil de Puerto Rico de 1979, 31 L.P.R.A. see. 5298, establece que las reclamaciones derivadas de la culpa o negligencia prescriben por el transcurso de un año a computarse desde que lo supo el agraviado. En el caso de autos el demandante advino en conocimiento de que no habían fondos para hacer la remodelación el 8 de julio de 1991 y el 25 de septiembre de 1991 éste presentó la demanda que tenemos ante nuestra consideración. Por tanto, la reclamación aludida no está prescrita.
Finalmente, el Tribunal concluyó,, luego de aquilatar la prueba y sopesar la credibilidad de los testigos, que la demandada terminó de forma injustificada las negociaciones con el señor Figueroa y que el señor Benjamín Martínez negoció en representación de Isla Petroleum Corporation y Gasolinas de Puerto Rico de forma simultánea. Concurrimos con su apreciación.
Durante la primera etapa de las negociaciones el Señor Figueroa se reunió con el señor Benjamín Martínez, Gerente de Ventas, de Isla Petroleum Corporation. En dichas negociaciones el señor Martínez le prometió al demandante que se remodelaría la estación y se construiría una tienda de conveniencia para que aumentara el consumo de gasolina y pudiera tener un margen de ganancias considerable. Prueba de ello es la carta suministrada al Bancó Santander, donde el señor Martínez mencionó que se proyectaba hacer unas remodelaciones en la estación del demandante. Recordemos, también, que fue el señor Martínez quién le informaba al demandante la etapa en que se encontraban la proyección de la construcción y de las remodelaciones.
De otra parte, los demandados estipularon que para 1990 Isla Petroleum Corporation y Gasolinas de Puerto Rico eran ambas subsidiarias de USA Petroleum Corporation. El 26 de julio de 1991, Gasolinas de Puerto Rico escribió una carta al Ledo. Luis M. Dubón III y la misma iba firmada por el señor Martínez, como Gerente de Ventas de Gasolinas de Puerto Rico. Como resultado de lo anteriormente expresado es forzoso concluir que Isla Petroleum Corporation hizo gestiones con la demandante a los efectos de remodelar la estación y construir una tienda de conveniencia.
Habida cuenta de lo precedentemente expuesto, se modifica la sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, a los efectos de eliminar la partida de daños y sufrimientos mentales a favor de los co-demandantes Brian y Mónica Figueroa y así modificada confirmamos la sentencia.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General