CARMEN A. RIVERA PÉREZ, demandante y recurrida, *v.* JOAQUÍN CRUZ CORCHADO, demandado y recurrente.

*Número:* RE-86-18 *Resuelto:* 20 de mayo de 1987

*Armando Chaar Padín,* abogado del recurrente; *Fernando Iglesias Rodríguez,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

La Sra. Carmen A. Rivera Pérez radicó ante el Tribunal Superior de Puerto Rico, Sala de San Juan, demanda de daños y perjuicios contra la Sra. María Flores Pabón y su ex esposo Joaquín Cruz Corchado. En la misma alegó, en síntesis y en lo pertinente, que mientras se encontraba durmiendo en una de las habitaciones de la residencia de la codemandada Flores Pabón fue víctima de un intento de violación por parte del codemandado Cruz Corchado.(1)

En relación con la alegada responsabilidad de la señora Flores Pabón, alegó que la referida codemandada "propició, permitió, alentó, instigó y actuó en ... concierto y [común] acuerdo con el codemandado Joaquín Cruz Corchado, por lo que es responsable solidariamente por los daños y perjuicios ocasionados a" ella. *Exhibit* IV, pág. 13.

El tribunal de instancia, en la sentencia que emitiera declarando con lugar la demanda radicada, determinó que en vista de la prueba presentada era "forzoso conclu[i]r que ésta [la codemandada Flores Pabón] conocía de los propósitos de aqu[é]l [el codemandado Cruz Corchado] y, a lo menos, omitió desalentarlo". *Exhibit* I, pág. 2. En vista de dicha determinación concluyó, como cuestión de derecho, que la codemandada Flores Pabón era solidariamente responsable por cuanto "la causa próxima del daño [era] el resultado de la acción combinada" de ambos codemandados. Íd., pág. 4. Como fundamento adicional, concluyó el referido foro que la codemandada Flores Pabón al "ofrecerle alojamiento esa noche a la demandante tenía el *deber legal de garantizarle* contra ataques a su persona". (Énfasis suplido.) Íd., pág. 4. En su consecuencia condenó a los

---

(1) Éste fue acusado por el delito de tentativa de violación; hizo alegación de culpabilidad por el delito menos grave de agresión agravada.

codemandados Flores Pabón y Cruz Corchado, en forma solidaria, a pagarle a la demandante la suma de $7,000 por concepto de los daños y perjuicios sufridos y la suma de $2,000 por concepto de honorarios de abogado.

Inconforme, la codemandada Flores Pabón acudió en tiempo ante este Tribunal imputándole al tribunal de instancia la comisión de los siguientes errores:

A. Erró el Honorable Tribunal, Sentenciador, al determinar que procedía la doctrina del "invitee".

B. Erró el Honorable Tribunal, Sentenciador, al hacer determinaciones de hechos contenidas en los párrafos primero, noveno, décimo, undécimo y d[é]cimotercero, a base de una prueba que nunca tuvo ante sí.

C. Erró el Honorable Tribunal, Sentenciador, al determinar, que la co-demandada, María Flores Pabón, responde por daños causados a la demandante por el co-demandado, Joaquín Cruz Corchado.

Ch. Erró el Honorable Tribunal, Sentenciador, al estimar en $7,000 los daños sufridos por la demandante, basados [ú]nicamente en la declaración de ésta y en un Certificado Médico inadmisible en evidencia y oportunamente objetado, y en $2,000 la cuantía por concepto de honorarios de abogado.

A los fines de evaluar el recurso radicado, ordenamos la preparación y certificación de una exposición narrativa de la prueba presentada. Una vez examinada la misma, le concedimos término a la parte demandante recurrida para que mostrara causa por la cual no debía revocarse la sentencia dictada en lo referente a la recurrente. Dicha parte ha comparecido. Resolvemos.

I

La exposición narrativa de la prueba certificada como correcta por el tribunal de instancia demuestra que para el 25 de febrero de 1982, la demandante recurrida Carmen A. Rivera Pérez se encontraba residiendo desde hacía varias semanas en la residencia de su amiga, la codemandada

María Flores Pabón, en lo que encontraba un lugar apropiado para mudarse en forma permanente. No pagaba canon alguno de alquiler por así hacerlo.

En la noche del 25 al 26 de febrero de 1982, la codemandada Flores Pabón salió de su hogar acompañada de su ex esposo Joaquín Cruz Corchado con el propósito de celebrar su cumpleaños. Regresaron a la casa a eso de las 11:00 P.M., retirándose ambos a dormir a la alcoba de la señora Flores Pabón. En la madrugada de 26 de febrero, como a eso de las 2:30 A.M., el señor Cruz Corchado, sin el conocimiento de su ex esposa, penetró en la habitación de la residencia donde dormía la demandante Rivera Pérez, intentando sostener relaciones sexuales con ésta mediante el uso de la fuerza y la violencia.

El codemandado Cruz Corchado no pudo lograr sus propósitos por razón, entre otras, de la oportuna intervención de la codemandada Flores Pabón, quien al despertarse por el ruido producto del incidente, se dirigió a la habitación de la demandante Rivera Pérez, poniéndole fin al mismo y ordenándole a su ex esposo que abandonara la residencia. Sobre este hecho realmente no existe controversia por cuanto la propia demandante Rivera Pérez así lo informó al agente de la Policía de Puerto Rico que investigó el suceso, policía Regino Algarín, quien testificó en la vista del caso a esos efectos.

Procede enfatizarse que la codemandada Flores Pabón presentó prueba, la cual no fue controvertida, a los efectos de que su ex esposo en ocasiones anteriores se había quedado a dormir en su casa y nunca había incurrido en conducta de esta naturaleza, como tampoco que ella supiera había sido convicto de delito público; razón por la cual ella no tenía motivo alguno para poder prever que algo así pudiera suceder.

Debe señalarse, por último, que una vez terminada la prueba de la parte demandante, el tribunal de instancia,

ante una solicitud de desestimación bajo la Regla 39.2(c) de Procedimiento Civil de 1979 presentada por la parte demandada, resolvió que la misma no procedía por razón de que en el caso aplicaba la doctrina del *invitee.*

## II

Es norma reiterada en nuestra jurisdicción que este Tribunal no intervendrá con la apreciación que de la prueba desfilada haya hecho el tribunal de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Quintana Tirado* v. *Longoria,* 112 D.P.R. 276 (1982); *Acosta & Rodas, Inc.* v. *PRAICO,* 112 D.P.R. 583 (1982); *Velázquez* v. *Ponce Asphalt,* 113 D.P.R. 39 (1982); *Vélez* v. *Srio. de Justicia,* 115 D.P.R. 533 (1984); *Rodríguez Cancel* v. *A.E.E.,* 116 D.P.R. 443 (1985); *Valencia, Ex parte,* 116 D.P.R. 909 (1986). Debe recordarse, sin embargo, que "el arbitrio del juzgador de hechos es respetable, mas no es absoluto" y que una "apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal". *Vda. de Morales* v. *De Jesús Toro,* 107 D.P.R. 826, 829 (1978).

Un examen sereno y minucioso de la exposición narrativa de la prueba, certificada como correcta por el tribunal de instancia, nos convence que la determinación que hiciera dicho foro a los efectos de que la codemandada Flores Pabón "conocía de los propósitos" del codemandado Cruz Corchado y que, por lo tanto, "la causa próxima del daño [fue] el resultado de la acción combinada" de ambos, no sólo no representa "el balance más racional, justiciero y jurídico de la totalidad de la evidencia que desfilara ante dicho Tribunal", *Ramos Acosta* v. *Caparra Dairy, Inc.,* 113 D.P.R. 357, 364 (1982), sino que no encuentra apoyo alguno en la prueba que desfilara ante el foro de instancia. *Abudo Servera* v. *A.T.P.R.,* 105 D.P.R. 728 (1977).

En virtud de lo antes expuesto, procede descartar dicha determinación como base para la imposición de responsabilidad a la codemandada recurrente Flores Pabón por lo sucedídole a la demandante en la residencia de aquélla.

### III

Como hemos visto, el tribunal de instancia, al declarar sin lugar durante el proceso celebrado la moción al amparo de la Regla 39.2(c) de Procedimiento Civil expresó que en el caso aplicaba la doctrina del derecho común del *invitee*. Por otro lado, en la sentencia que emitiera resolvió que la codemandada Flores Pabón al "ofrecerle alojamiento esa noche a la demandante tenía el *deber legal de garantizarle* contra ataques a su persona". (Énfasis suplido.) *Exhibit* I, pág. 4.

El caso de autos, en su consecuencia, nos permite la oportunidad de considerar el tema de la responsabilidad civil, si alguna, del anfitrión de una residencia en relación con los daños sufridos en la misma por un invitado como consecuencia de la comisión de actos delictivos cometidos por un tercero en la persona del huésped gratuito.

De entrada, procede recordar lo expresado por este Tribunal en *Gierbolini* v. *Employers Fire Ins. Co.*, 104 D.P.R. 853, 855-856 (1976), a los efectos de que:

> ... *el derecho de daños en Puerto Rico se rige,* con contadas excepciones que nuestra legislación ha establecido, *por las normas del derecho civil.* Las reglas del derecho común y de otros sistemas jurídicos pueden constituir materia útil para el estudio comparado y en ocasiones el desarrollo de instituciones autóctonas. Hay instancias, de hecho, de convergencia o de deseo que ella ocurra, entre el derecho civil y el común en facetas de este campo. ... Se llega en ocasiones a la misma conclusión por caminos diferentes. *No es permisible, sin embargo, intentar resolver nuestros problemas de daños a espaldas de la doctrina civil aplicable,* sin que

ello quiera decir que en todo momento sean ellas las más acertadas.

Situaciones como las que aquí nos ocupan ilustran lo expresado. La inclinación usual es a decidirlas a base de la antigua diferencia en derecho angloamericano entre la responsabilidad que se le debe a un *invitee*, un *franchisee* o *licensee* o a un *trespasser*. *Goose* v. *Hilton Hotels*, 79 D.P.R. 523 (1956). *Esta distinción se desconoce por completo, sin embargo, en derecho civil y su importancia en el derecho angloamericano se está reduciendo perceptiblemente*. En el caso específico del huésped la generalidad de la jurisprudencia norteamericana continúa aceptando la terminología tradicional, pero ésta se halla bajo poderoso ataque. ... Varios estados rechazan ya la clasificación consagrada del huésped. ... El propio Tribunal Supremo de Estados Unidos califica la distinción entre "*invitees*" y "*licensees*" como reliquia de la época feudal. ... En Inglaterra se ha ido aún más lejos, habiéndose derogado por ley la diferencia entre "*invitees*" y "*franchisees*". ... Para los antecedentes históricos de estos conceptos, véase: Marsh, *The History and Comparative Law of Invitees, Licensees and Trespassers*, 69 L.Q. Rev. 182, 359 (1953).

Dada la creciente inconformidad en el derecho angloamericano con las referidas diferencias, no es de extrañar que en regiones civilistas en íntimo contacto con el derecho común la doctrina se resista a aceptar con beneplácito dichos combatidos conceptos. Nadeau, *Traité de Droit Civil de Québec*, Montreal, vol. 8, 1949, pág. 157 y ss. *Procede igualmente en nuestro caso que el problema ante nos se examine fundamentalmente bajo los supuestos del derecho civil*. (Énfasis suplido y citas omitidas.)(²)

▮ En *Gierbolini* v. *Employers Fire Ins. Co.*, ante, pág. 859 —al rechazar la aplicabilidad de la "teoría del riesgo o de la responsabilidad sin culpa"(³) en una situación donde

---

(²) Véase, en adición, *Valle* v. *Amer. Inter. Ins. Co.*, 108 D.P.R. 692, 695–696 (1979).

(³) "La teoría del riesgo sostiene básicamente que 'Todo el que mediante su actividad crea un riesgo de dañar a otro, debe ser siempre responsable de este

la persona sufrió daños al sentarse sobre un banquillo que cedió ante su peso, localizado el mismo en el patio de la residencia donde ésta se encontraba como invitado o huésped— expresamos que no "hemos comprobado, sin embargo, bajo ninguna de las teorías reseñadas, que en el estado actual del derecho civil el daño sufrido por un invitado tenga que compensarse de todos modos, medie o no medie culpa".

En dicho caso, en vista de lo antes expresado, procedimos a explorar si el dueño de la residencia había o no incurrido en culpa al amparo de las disposiciones del Art. 1802 del Código Civil de Puerto Rico y de los principios generales pertinentes del derecho civil. No vemos razón alguna para que el análisis jurídico sea diferente en un caso como el que nos ocupa; esto es, donde el daño sufrido por el huésped es producto del acto criminal intencional cometido por un tercero. Sobre todo en casos, como el presente, en que no está envuelto beneficio económico alguno para el anfitrión.[4]

 Comentando el Art. 1.902 del Código Civil español —Art. 1802 del Código Civil de Puerto Rico— expresa Lacruz que el mismo establece, *con valor de principio*, que el que por acción u omisión causa daño a otro interviniendo culpa o negligencia está obligado a reparar el daño causado. Añade que dicha disposición legal *se enuncia en forma de regla general y sin concretarse a determinados tipos de*

daño, si se produce, sin necesidad de ninguna culpa personal.' Orgaz, Alfredo, *La Culpa*, Buenos Aires, 1970, págs. 24–25. La teoría del riesgo se conoce también como la teoría de la responsabilidad sin culpa, del daño objetivo, del riesgo creado o el riesgo objetivo, Borrell Macía, *Responsabilidades Derivadas de Culpa Extracontractual Civil*, Ed. Bosch, Barcelona, 1942, pág. 6." *Gierbolini* v. *Employers Fire Ins. Co.*, 104 D.P.R. 853, 857–858 (1976).

[4] La teoría del riesgo se extiende usualmente a actividades que son fuente para el autor de beneficio económico. A. Orgaz, *La Culpa*, Buenos Aires, Ed. Bosch, 1970, pág. 25; M. Fernández Martín-Granizo, *Los daños y la responsabilidad objetiva en el derecho positivo español*, Pamplona, Ed. Aranzadi, 1972, pág. 108.

*infracción,* lo que presupone *una norma genérica* que nos prohíbe causar daño a otro mediante conducta ya sea activa, ya pasiva. J. L. Lacruz Berdejo, *Elementos de Derecho Civil,* Barcelona, Ed. Bosch, 1977, T. II, Vol. I, pág. 188.

Ahora bien, establece el Art. 1057 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3021, que:

> La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar.
>
> Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia.

Por su parte, el Art. 1058 del referido Código Civil, 31 L.P.R.A. sec. 3022, expresa que:

> Fuera de los casos expresamente mencionados en la ley, y de los en que así lo declare la obligación, nadie responderá de aquellos sucesos que no hubieran podido preverse, o que previstos, fueran inevitables.

██ En *Rivera* v. *Maryland Casualty Co.,* 96 D.P.R. 807, 810 (1968), expresamos que si "la culpa o negligencia en que descansa la responsabilidad del Art. 1802 consiste, según el 1057, en dejar de ser diligente acorde a determinadas circunstancias, y conforme al Art. 1058 se responde de todo suceso que pudo preverse, *el Art. 1802 gira inevitablemente en torno a la función de previsión del individuo, como factor determinante de su responsabilidad con su congénere".* (Énfasis suplido.)

██ Reiterada y repetidamente hemos reconocido el *criterio de previsibilidad* como base para la responsabilidad extracontractual. Véanse: *Pacheco* v. *A.F.F.,* 112 D.P.R. 296 (1982); *Dworkin* v. *S.J. Intercont. Hotel Corp.,* 91 D.P.R. 584

(1964); *Pabón Escabí* v. *Axtmayer*, 90 D.P.R. 20 (1964); *Weber* v. *Mejías*, 85 D.P.R. 76 (1962).

En *Pacheco* v. *A.F.F.*, ante, pág. 300, expresamos sin embargo que:

> ... Claro está, esto no quiere decir que la persona esté obligada a prever todos los posibles riesgos que puedan concebirse en una determinada situación, pues prácticamente se convertiría entonces en una responsabilidad absoluta. Así en *Hernández* v. *La Capital*, 81 D.P.R. 1031, 1038 (1960), expresamos que "el deber de previsión no se extiende a todo peligro imaginable que conccebiblemente pueda amenazar la seguridad ... *sino a aquel que llevaría a una persona prudente a anticiparlo*". (Énfasis suplido.)

Dicho de otra forma, según este Tribunal lo resumiera en el caso específico del huésped de una residencia:

> Corresponde antes que nada que determinemos *el criterio* para precisar la existencia o ausencia de culpa en estas circunstancias. *La regla generalmente aceptada es que se da culpa cuando no se obra como un hombre de diligencia normal u ordinaria, un buen padre de familia, conforme a las circunstancias del caso.* ... Lo determinante es cómo se hubiese desenvuelto en situación parecida un hombre de prudencia común u ordinaria. ... La culpa, sin embargo, no abarca *el simple error de juicio*, las leves inadvertencias, los pequeños lapsos de atención que son parte de la condición humana.... (Énfasis suplido.) *Gierbolini* v. *Employers Fire Ins. Co.*, ante, págs. 859–860.

## IV

Un examen de la prueba que desfiló ante el tribunal de instancia en el presente caso —según ello surge de la exposición narrativa de la prueba certificada como correcta por el propio foro de instancia— nos convence de que no procede la imposición de responsabilidad a la codemandada

recurrente Flores Pabón, dados los hechos particulares del caso y a la luz de los principios antes enunciados.

La prueba incontrovertida que desfiló ante el tribunal de instancia demuestra que la codemandada Flores Pabón conocía a su ex esposo desde hacía varios años; que ella no tenía conocimiento alguno de que este individuo fuera uno de carácter violento, o que hubiera alguna vez intentado atacar sexualmente a una mujer, o que tuviera historia o récord delictivo de clase alguna. Por el contrario, la prueba fue a los efectos de que hasta donde ella podía razonablemente saber, Cruz Corchado era un hombre obediente de la ley, que se desempeñaba como jefe de uno de los cuarteles del Servicio de Bomberos de Puerto Rico. De hecho, como señala Prosser,[5] "Normalmente hay mucha menos razón para anticipar actos de un tercero que son maliciosos e intencionalmente dañinos, que los de mera negligencia; *y esto es más cierto todavía, si, como usualmente ocurre, tales actos son de naturaleza criminal*. Bajo todas las circunstancias ordinarias y normales, faltando razón para esperar lo contrario, *la persona puede razonablemente proceder bajo la presunción de que los demás obedecerán la ley penal*". (Énfasis suplido.)[6]

En fin, no existía hecho o circunstancia alguna de los cuales la codemandada Flores Pabón —como persona prudente o "buen padre de familia"—[7] pudiera prever o anticipar que la demandante Rivera Pérez pudiera sufrir daño como consecuencia de haberle permitido al codemandado Cruz Corchado pernoctar esa noche junto a ella en su residencia. *Rivera* v. *Maryland Casualty Co.*, ante; *Pacheco*

---

[5] Prosser, *The Law of Torts Handbook Series* Sec. 33, págs. 173–174 (4ta ed. 1971).

[6] Citado con aprobación por este Tribunal en *Estremera* v. *Inmobiliaria Rac, Inc.*, 109 D.P.R. 852, 857–858 (1980).

[7] En este caso, como "buena madre de familia".

v. *A.F.F.,* ante. A la luz de las circunstancias particulares del caso, somos del criterio que su actuación puede catalogarse a lo sumo como un simple error de juicio, *Gierbolini* v. *Employers Fire Ins. Co.,* ante, el cual no es fuente de responsabilidad.

Por las razones antes expresadas, *procede expedir el auto solicitado; modificar la sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de San Juan, a los fines de exonerar de responsabilidad a la codemandada María Flores Pabón y así modificada, se confirma la misma. Se dictará sentencia de conformidad.*

El Juez Presidente Señor Pons Núñez no intervino. Los Jueces Asociados Señores Hernández Denton y Alonso Alonso concurren en el resultado sin opinión escrita.