# 97 DTA 129

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE ARECIBO-UTUADO

LUZ C. BUTLER MOYA
Querellante-Recurrida

v.

FURIEL AUTO SALES, CORP.
Querellada-Recurrente

Núm. KLRA-96-00144

San Juan, Puerto Rico, a 9 de junio de 1997

Panel integrado por su presidenta, Juez Rivera de Martínez
y los Jueces Cabán Castro y Rivera Pérez

Cabán Castro, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

En el presente recurso se nos solicita la revisión de una resolución del Departamento de Asuntos del Consumidor emitida el 12 de abril de 1996. Mediante dicha resolución la agencia decretó la resolución de un contrato de compraventa de un vehículo de motor y ordenó a las recurrentes que pagaran solidariamente a la recurrida la suma del pronto pago del vehículo más las mensualidades que se hubiese pagado por el mismo. Las recurrentes solicitaron oportunamente reconsideración, la que fue acogida a tiempo por la agencia y finalmente declarada No Ha Lugar el 26 de junio de 1996.

### I

El 31 de diciembre de 1994 la recurrida Luz Butler Moya visitó el negocio de Furiel. Interesaba adquirir una guagua Toyota modelo 4 Runner. Fue atendida por el vendedor Rafael Santiago quien le

mostró varias unidades modelo 1995, Butler Moya deseaba comprar una de color verde o azul, pero como entre las mostradas no había ninguna de ese color se ordenó buscar una que estaba en el lote de Furiel en Río Piedras. La unidad resultó ser verde; era un modelo de 1994. Las unidades modelo 1995 costaban $22,500.00 cada una.

Cuando la guagua modelo 1994 llegó al negocio la recurrida la inspeccionó. El vendedor le informó que su precio era $21,500 00 en consideración a que era de 1994 y a que se le había retocado la pintura en el área de la capota debido a que una rama de un árbol le había hecho unos rayazos superficiales.

Posterior a la reparación de la pintura, el *"dealer"* le instaló a la guagua un *"rack"* o *"maletero"* en la capota. Butler seleccionó la guagua modelo 1994, abonó al precio de venta un pronto de $2,500.00 y financió la diferencia de $19,000.00 con el Banco Popular de Puerto Rico.

La advertencia sobre los rayazos y la reparación no se hizo por escrito ni se anotó en el espacio para observaciones en el original de la factura que se le entregó a la compradora Butler. Sin embargo, al día siguiente de la venta el gerente de Furiel añadió la siguiente oración en su copia de la factura de venta:

*"A principios de abril de 1995, mientras lavaba la guagua, Butler se percató de defectos en la pintura y la carrocería del vehículo en áreas que no eran la capota. Butler reclamó a Furiel por los defectos de la pintura alegando que tenía más defectos de los que le habían dicho. El vendedor, Rafael Santiago, y el Sr. Francisco Ramos, Presidente de Furiel, le explicaron que había 7 unidades a las cuales les había caído un árbol encima; que unas habían sido declaradas pérdida total y pagadas por el seguro y que otras el seguro pagó para que fueran reparadas. Ante esa información, Butler solicitó cancelar el contrato y pidió que se le diera una guagua nueva."*

*El Sr. Ramos le ofreció reparar la guagua sin costo adicional o cambiarla por una del año 1995, pero en este último caso Butler tenía que pagar una diferencia de $1,000.00 a $1,500.00, la cual no aceptó.*

*Procedió a llevar la guagua a un taller de hojalatería para una evaluación. El hojalatero encontró que al vehículo le habían reparado y pintado, además de la capota, el guardalodo derecho, el "bumper" delantero, la puerta delantera lateral y un área del panel izquierdo.*

*El 19 de abril de 1996 Butler radicó una querella ante el DACO en la que alegó haber sido víctima de una práctica engañosa en la venta del vehículo y reclamó que se le cambiara la unidad por una nueva que estuviera en óptimas condiciones.*

*El DACO ordenó una inspección conjunta del vehículo como resultado de la cual el técnico de la agencia informó los siguientes hallazgos:*

*1. El guardalodo delantero derecho está mal trabajado (tiene malas terminaciones, se le nota el bondo y la macilla);*

*2. En el lado izquierdo delantero de la capota se le nota el bondo y el mismo está reventado;*

*3. La puerta delantera del lado del chofer fue retocada;*

*4. En el panel y en la capota por la parte trasera se puede apreciar que está repintada;*

*5. El "bumper" delantero fue retocado (los colores no son los mismos);*

*6. El auto fue accidentado y reparado."*

El 20 de diciembre de 1995 se celebró la vista administrativa. En la misma las partes tuvieron amplia oportunidad de presentar su prueba y exponer sus respectivas posiciones. El 12 de abril de 1996 la agencia emitió resolución. Determinó el foro administrativo que el vehículo había sido objeto

de un accidente causado por un árbol que cayó sobre ocho (8) guaguas de las cuales el seguro pagó cuatro (4) como pérdida total y las otras cuatro (4) fueron reparadas, siendo la de la recurrida una de éstas. En vista de que a la recurrida sólo le informaron que la guagua había sufrido unos rayazos superficiales y que sólo le habían retocado la pintura, omitiendo informar la magnitud real de los daños y la extensión de las reparaciones, la agencia concluyó que el vendedor incurrió en dolo grave y, en armonía con el derecho aplicable, ordenó la resolución del contrato de compraventa y la mutua devolución de las prestaciones.

Los entonces querellados agotaron el trámite administrativo, pero no pudieron convencer a la agencia para que variara su criterio. Oportunamente acuden ante nos y plantean la supuesta comisión de los siguientes errores:

*"Erró el Departamento de Asuntos del Consumidor al determinar que, conforme a la prueba desfilada por las partes, medió dolo grave.*

*Erró el Departamento de Asuntos del Consumidor al determinar que conforme a la prueba desfilada por las partes se justifica la anulación del contrato."*

## II

Los procedimientos y las decisiones ante un organismo administrativo tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. La ley y la jurisprudencia le ordenan a un tribunal revisor presumir la corrección de los procedimientos y decisiones de las agencias ya que como cuestión de derecho, éstas se podrán dejar sin efecto solamente en ausencia de evidencia sustancial. *Henríquez v. C.E.S.,* 120 D.P.R. 194, 210 (1987). Por esta razón, las conclusiones e interpretaciones de los organismos administrativos merecen gran consideración y respeto por los tribunales, *Vázquez v. A.R.P.E.,* op. de 13 de junio de 1991, 129 D.P.R. ___, **91 JTS 53**; *Asoc. Médica de P.R. v. Cruz Azul,* 118 D.P.R. 669 (1987). Corresponde al litigante derrotar con prueba suficiente la presunción de regularidad y corrección de que gozan las determinaciones y decisiones del foro administrativo. En ausencia de pasión, prejuicio, parcialidad o error manifiesto los tribunales no deben intervenir con la apreciación de la prueba. *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8 (1987), y casos allí citados.

En este caso el objeto de la venta era un vehículo de motor que había sufrido ciertos daños antes de efectuarse la venta debido a la caída de un árbol. En las conversaciones previas a la venta el recurrente aminoró sustancialmente la gravedad y magnitud de los daños al informar sobre éstos a la compradora. Se limitó a informarle que se trataba de unos rayazos superficiales en el área de la capota que sólo habían requerido un retoque de la pintura. En atención a ello y a que la unidad era del 1994 el vendedor rebajó $1,000 00 en el precio de venta. La levedad del daño descrito y la consecuente rebaja de precio fueron utilizados como anzuelo para lograr que la recurrida se decidiera a hacer la compra. La realidad es que el daño era mucho mayor y que la compradora no habría cerrado el trato de haberlo sabido a tiempo. Así lo expresó tan pronto como las defectuosas reparaciones empezaron a hacer notar daños que no le fueron advertidos al momento de la compra.

Es nulo el consentimiento prestado por error, violencia, intimidación o dolo Artículo 1217, Código Civil, 31 L.P.R.A. Sec 3404. Hay dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes es inducido el otro a celebrar un contrato que, sin ellas, no hubiera hecho.

Art. 1221, Código Civil, 31 L.P.R.A. Sec. 3408. *"Para que el dolo produzca la nulidad de los contratos deberá ser grave y no haber sido empleado por las dos partes contratantes. El dolo incidental sólo obliga al que lo empleó a indemnizar daños y perjuicios",* Art. 1222, Código Civil, 31 L.P.R.A. Sec 3409.

En sentido amplio, dolo es sinónimo de mala fe, pero en sentido estricto significa la maquinación o artificio de que se sirve uno de los contratantes para engañar al otro. Puig Brutau, *Compendio de Derecho Civil,* Segunda edición, Vol. II, Bosch, Barcelona, 1994, pág. 193. El dolo afecta la formación de la voluntad, pues el contrato se ha celebrado sin el debido conocimiento, Puig Brutau, *Id.,* pág. 187.

Maquinar es urdir o tramar un asunto con astucia o cautela para lograr un fin. Se ha resuelto que

guardar silencio sobre condiciones que afectan el objeto de una compraventa con el propósito de efectuar la misma es una actuación dolosa. *Márquez v. Torres Campos,* 11 D.P.R. 854, 870-871 (1982).

Es cierto que aquí no se guardó un silencio total sobre una condición que afectaba el valor de la cosa. El dolo o engaño consistió en haber ocultado a sabiendas la magnitud del daño. Si se hubiera expresado el daño en toda su extensión seguramente las posibilidades de venta se habrían reducido y el precio de venta habría sido más bajo.

El Reglamento Núm. 4797 de DACO, Reglamento de Garantías de Vehículos de Motor, Artículo 22.1, dispone lo siguiente:

*"Todo vendedor de un vehículo de motor nuevo notificará al comprador por escrito, si previo a la venta de dicho vehículo, éste ha sido objeto de alguna reparación cosmética significativa o mecánica estructural."*

El requisito de notificar por escrito no se cumplió. Pero aun si aceptáramos la notificación verbal que se hizo, la misma fue incompleta e insuficiente, ocultando aspectos que, de haberse revelado, hubieran impedido la venta o modificado el precio.

El recurrente señala que no se justificaba la anulación del contrato. Su contención es que se trata de un caso de dolo incidental porque la información ofrecida a la recurrida fue insuficiente. No tiene razón. El dolo que causa la anulación del contrato tiene que ser grave. El dolo grave es el que ha tenido una eficacia determinante en la celebración del contrato. Puig Brutau, *Id.*, pág. 193. El dolo grave o causal provoca la nulidad por vicio del consentimiento, en el origen del contrato, cuando éste se obtiene por maquinaciones insidiosas. Arts. 1217, 1221 y 1222, 31 L.P.R.A. Secs. 3404, 3408 y 3409. Esta modalidad del dolo incluye *"el engaño, el fraude, la falsa representación, la indebida influencia." Rivera v. Sucn. Díaz Luzunaris,* 70 D.P.R. 181 (1949); *Cruz v. Autoridad de Fuentes Fluviales,* 76 D.P.R. 312 (1954). El dolo incidental, que no anula el contrato, pero da derecho a indemnización por los daños, es el que no ha inducido de manera decisiva a contratar, pero ha incidido en el contenido del contrato. Puig Brutau, *Id.*, pág. 193. Se le llama dolo contractual porque se produce en el curso de la consumación del contrato, o sea, en el cumplimiento de las obligaciones contractuales, *Márquez v. Torres Campos, supra.*

El citado caso resolvió expresamente la misma cuestión aquí planteada sobre la concurrencia de las acciones por vicios ocultos y dolo. Véanse *Márquez v. Torres Campos, supra,* págs. 865-869. Las reclamaciones por ventas defectuosas no tienen que enmarcarse necesariamente dentro de la acción redhibitoria o estimatoria. *Márquez v. Torres Campos, supra,* pág. 866; *González v. Centex Const. Co.,* 103 D.P.R. 82 (1974). Son concurrentes y no incompatibles entre sí las acciones de saneamiento por vicios ocultos y la de nulidad por error sustancial o engaño doloso que vicien el consentimiento. En un caso en que se ha vendido un objeto con defectos puede surgir la posibilidad de que se ejercite la acción especial por vicios ocultos y/o una o varias de las acciones de carácter general las cuales no son incompatibles de por sí. *Márquez v. Torres Campos, supra,* pág. 869.

· La recurrida no presentó una acción de saneamiento por vicios ocultos, sino una por *"práctica engañosa".* Durante el procedimiento se aportó prueba creíble y suficiente para sostener la conclusión de que el vendedor no reveló información sobre los daños del vehículo. Esa omisión se produjo en un momento crucial de la venta: el momento en que la compradora estaba formando su voluntad para consentir. Es decir, que el dolo se produjo en el origen del contrato y su efecto recaía directa y totalmente sobre el objeto del contrato. Es impertinente la cuestión de si los defectos hacen la cosa impropia para el uso a que se le destina, pues este es un criterio a considerar en casos de vicios ocultos, no en casos de nulidad por vicios del consentimiento.

La prueba desfilada ante DACO justificaba plenamente decretar la anulación del contrato.

Por los fundamentos expuestos, se deniega el recurso de revisión presentado por los recurrentes.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.