Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL – OATA-2025-251

| | | |
|---|---|---|
| UNI-GOLD DEVELOPMENT, CORP.<br><br>Apelada<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE CAYEY<br><br>Apelante | TA2025AP00620 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.: G DP2015-0147<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Rodríguez Flores y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 17 de febrero de 2026.

Comparece el Municipio Autónomo de Cayey (en adelante, Municipio o parte apelante) mediante un recurso de apelación para solicitarnos la revisión de la *Sentencia* emitida el 26 de septiembre de 2025, y notificada el 2 de octubre del mismo año, por el Tribunal de Primera Instancia, Sala Superior de Guayama.[1] Mediante la *Sentencia* apelada, el foro primario ordenó a Uni-Gold Development, Corp. (en adelante, Uni-Gold o parte apelada) a realizar las reparaciones necesarias a las calles del proyecto de la Urbanización Colinas de Cayey en un término de noventa (90) días, las cuales no conllevarían el volver a hacer las calles en hormigón. Igualmente, dispuso que, una vez realizadas las reparaciones, el Municipio debería, en un término de treinta (30) días, realizar todas las gestiones requeridas, para poder efectuar el trámite de traspaso y destino a uso público de las calles ubicadas en la referida urbanización.

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 1, Apéndice 2.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

I

De entrada, destacamos que esta es la *tercera* ocasión en la que este Tribunal de Apelaciones atiende un recurso relacionado a la controversia de epígrafe. Siendo así, esta Curia se circunscribirá a los hechos pertinentes a la controversia de marras.[2]

En primer lugar, surge de los autos que, el 15 de octubre de 2015, Uni-Gold presentó una petición de *Mandamus* contra el Municipio, en el alfanumérico G PE2015-0128.[3] Acotó que, allá para el 2012, adquirió el proyecto de la Urbanización Colinas de Cayey con el endoso del municipio para la construcción de veintisiete (27) unidades. Especificó que, en ese momento, ya quince (15) de las referidas unidades se encontraban en proceso de construcción. Indicó que, luego, solicitó un endoso para la construcción de cuarenta y siete (47) solares, en vez de veintisiete (27), sobre la misma propiedad, a los fines de construir viviendas más pequeñas y económicas. Sin embargó, manifestó que, a la fecha, pese a una multiplicidad de gestiones, no había logrado las autorizaciones correspondientes por razón de la inacción y negligencia del Municipio.

Asimismo, alegó que se encontraba en espera de endosos de parte del Municipio para un nuevo acceso por la calle Paseo de Hucar, así como para el proyecto del alumbrado eléctrico y para poder asfaltar y terminar las calles. A tenor, le solicitó al tribunal de

---

[2] En la *primera* ocasión, un Panel hermano revocó una *Sentencia* parcial emitida por el tribunal de instancia el 20 de marzo de 2018, y notificada el día 27, del mismo mes y año. Véase *Sentencia* del alfanumérico KLAN201800615. Por otro lado, en la *segunda* ocasión, otro Panel hermano confirmó la desestimación decretada mediante *Sentencia* parcial del 7 de julio de 2022, notificada al día siguiente, de una reclamación incoada por el Municipio contra Uni-Gold en la cual acotó que esta última le adeudaba cierta cantidad por razón de la patente municipal, arbitrios de construcción y uso del vertedero. Esta reclamación se consolidó con el caso de epígrafe previo a ser desestimada. Véase *Sentencia* del alfanumérico KLAN202200768.

[3] Véase autos originales del Tribunal de Primera Instancia (TPI), Caso Núm. G PE2015-0128, Tomo I.

instancia que ordenara al Municipio a aprobar y endosar los permisos necesarios para poder continuar el desarrollo de la urbanización en cuestión.

Subsiguientemente, el 26 de octubre de 2015, Uni-Gold presentó otra *Demanda* contra el Municipio y otros, en el alfanumérico G DP2015-0147, en la cual reiteró prácticamente las mismas alegaciones que en la antes mencionada petición de *mandamus*.[4] En esta, añadió que las acciones del Municipio le habían ocasionado daños, así como una pérdida económica sustancial. Estimó los daños sufridos en unos $8,000,000.00 dólares. En consecuencia, solicitó que se declarase con lugar la demanda y se condenara al Municipio, así como a las demás partes demandadas, a pagar la cantidad reclamada, más las costas, gastos y honorarios de abogado.

Tras desestimarse la petición de *mandamus* mediante *Sentencia* del 21 de enero de 2016, notificada el día 25, del mismo mes y año, por incumplir con ciertas formalidades, la parte apelada incoó una solicitud de reconsideración.[5] Examinado lo anterior, mediante *Resolución y orden* notificada el 4 de febrero de 2016, el tribunal de instancia dejó sin efecto la desestimación.

Pasado un tiempo, y luego de varias solicitudes interpuestas, mediante *Orden* del 24 de mayo de 2016, reducida escrito el día 31, del mismo mes y año, y notificada el 2 de junio de 2016, se ordenó la consolidación de los casos antes mencionados,[6] entiéndase la petición de *mandamus* y la demanda sobre daños y perjuicios.

Tras varias instancias procesales, innecesarias de pormenorizar, las que incluyeron, pero no se limitaron, a la inclusión de la OGPe como parte demandada, para luego desistir de

---

[4] SUMAC TA, a la Entrada Núm. 1, Apéndice 1.
[5] Véase autos originales del TPI, Caso Núm. G PE2015-0128, Tomo I.
[6] *Íd.,* Caso Núm. G DP2015-0147.

las reclamaciones en su contra sin perjuicio,[7] el 10 de febrero de 2017, fueron llamados los casos para Vista.[8] En lo pertinente, uno de los representantes legales de Uni-Gold, el licenciado Miguel Oppenheimer (Lcdo. Oppenheimer), informó en corte abierta al tribunal que sostuvo una reunión con el Municipio a los fines de llegar a unos acuerdos. Así, pues, el juzgador requirió que se vertieran los acuerdos alcanzados para récord.

En consideración a lo requerido, el Lcdo. Oppenheimer informó los acuerdos los cuales consistieron en que:

- [L]as calles del proyecto serán de hormigón y tendrá un espesor de 5 pulgadas. Será un hormigón de 4,000 PSI, no requerirá ningún aditivo especial[.]

- [L]a sección típica de la calle será de 11 metros, que incluirá las especificaciones según el plano aprobado[.]

- [E]l Municipio se compromete a que tan pronto se le notifique que terminaron las calles irán en el término de 30 días naturales a inspeccionarlas y de una vez examinarán el alumbrado. [Diez] [(10)] días después emitirán la certificación o documento necesario a OGPe y/o AEE[.]

- [S]e comprometió a someter la escritura de cesión de calles en 10 días después de haberse inspeccionado las calles.

- [S]e hará un corte en la calle del proyecto para darle agua. En los próximos 10 días laborables se comunicarán de la oficina del Ing. César Rodríguez con el Sr. Orlando Ortiz para pasar a hacer una inspección del lugar donde se hará el trabajo para poder solicitar la fianza y llevar el proceso de autorización para romper la calle y conectar el tubo de agua[.]

- [U]na vez se rompa y se haga el arreglo[,] el demandante reparará la calle en hormigón a lo ancho y a lo largo de la excavación (de acera a acera).[9]

Luego, el 10 de agosto de 2017, se celebró una Vista de seguimiento en la cual no compareció el Municipio ni su representación legal. En esta, Uni-Gold argumentó que el Municipio había incumplido con los acuerdos de la vista del 10 de febrero de 2017, así como que había incumplido con presentar su alegación responsiva respecto a la petición enmendada de *mandamus*. A tenor,

---

[7] Véase autos originales del TPI, Caso Núm. G DP2015-0147, Tomo I. *Sentencia parcial* del 23 de enero de 2017, notificada el día 25, del mismo mes y año.
[8] SUMAC TA, a la Entrada Núm. 1, Apéndice 6.
[9] *Íd.*, Apéndice 6, págs. 2-3.

la parte apelada solicitó en corte abierta que se le anotara la rebeldía al Municipio.[10] Evaluado lo anterior, el 20 de marzo de 2018, notificada el día 27, del mismo mes y año, el foro primario emitió una *Sentencia* en la cual le anotó la rebeldía al Municipio y le ordenó a aprobar y endosar los permisos necesarios para que continuara el desarrollo del proyecto de la Urbanización Colinas de Cayey.[11]

Inconforme, y luego denegada una oportuna solicitud de reconsideración, el Municipio acudió ante este Tribunal de Apelaciones mediante un *Recurso de Apelación.* Mediante *Sentencia* del 22 de octubre de 2018, un Panel hermano revocó la sentencia del tribunal de instancia.[12] El Tribunal concluyó que no había un fundamento en ley que impusiera un deber al Municipio a cumplir. En consideración a lo anterior, se desestimó la solicitud de *mandamus* contra el Municipio.

Como corolario de lo anterior, el 9 de enero de 2019, el Municipio incoó una *Moción de desestimación,* a los fines de que se desestimara la reclamación por daños y perjuicios en su contra.[13] En esta, planteó que, puesto a que la reclamación de daños presentada por Uni-Gold se basó en la inacción del Municipio de evaluar y aprobar los permisos solicitados, esta debía desestimarse. Ello, principalmente, puesto a que el Tribunal de Apelaciones determinó que esta responsabilidad recaía exclusivamente en la OGPe, por lo que Municipio no incurrió en ningún acto u omisión culposa.

En reacción, el 30 de enero de 2019, Uni-Gold presentó una oposición a la desestimación de la reclamación sobre daños y perjuicios contra el Municipio. En esa misma fecha, Uni-Gold presentó una *Demanda Enmendada,* a los fines de incluir a la OGPe

---

[10] Véase autos originales del TPI, Caso Núm. G DP2015-0147, Tomo I.
[11] *Íd.,* Caso Núm. G PE2015-0128, Tomo II.
[12] SUMAC TA, a la Entrada Núm. 1, Apéndice 7. Véase, además, *Sentencia* del alfanumérico KLAN201800615.
[13] SUMAC TA, a la Entrada Núm. 1, Apéndice 8.

como parte demandada, así como alegar que, en corte abierta, las partes llegaron a una serie de acuerdos, los cuales fueron incumplidos por parte del Municipio.[14]

Examinados los antedichos escritos, el 5 de febrero de 2019, notificada el día 11, del mismo mes y año, el tribunal de instancia emitió una *Sentencia Parcial*.[15] Mediante este dictamen, el referido foro desestimó la causa de acción de daños y perjuicios respecto a lo que estuviera derivado del alegado incumplimiento del deber ministerial del Municipio. Por otra parte, permitió la enmienda a la demanda, a los únicos efectos de reclamar el cumplimiento de la transacción acordada en corte abierta y cualquier acción derivada del alegado incumplimiento de la referida transacción.

En desacuerdo, el 25 de febrero de 2019, Uni-Gold presentó una *Solicitud de reconsideración*,[16] la cual fue declarada sin lugar.[17]

Pasado un tiempo, el 15 de octubre de 2019, el Municipio presentó su *Contestación a la Demanda Enmendada*.[18] En esta, negó algunas de las alegaciones y aceptó otras. Igualmente, presentó sus defensas afirmativas. Específicamente, negó haber incumplido los acuerdos de la vista del 10 de febrero de 2017. No obstante, alegó afirmativamente que fue en cambio la parte apelada quien incumplió con todos los acuerdos anunciados en corte abierta.

Luego de varios trámites procesales, los cuales incluyeron, pero no se limitaron a la presentación del informe para el manejo del caso y la celebración de la vista inicial, así como una solicitud de sentencia sumaria la cual fue declarada sin lugar y la celebración de una vista transaccional,[19] el 27 de noviembre de 2024 el tribunal de instancia celebró una vista evidenciaria.[20]

---

[14] SUMAC TA, a la Entrada Núm. 1, Apéndice 9.
[15] *Íd.*, Apéndice 10.
[16] *Íd.*, Apéndice 11.
[17] *Íd.*, Apéndice 12.
[18] *Íd.*, Apéndice 13.
[19] Véase autos originales del TPI, Caso Núm. G DP2015-0147, Tomo II y III.
[20] *Íd.*, Tomo III.

En la antedicha vista, se presentó prueba documental y testifical. La prueba testifical de Uni-Gold consistió en el testimonio del Ingeniero Carlos Oquendo (Ing. Oquendo) y el de Orlando Ortiz (señor Ortiz). Por otro lado, la prueba testimonial del Municipio consistió en el testimonio de Ingeniero César Rodríguez (Ing. Rodríguez).[21]

En cuanto a la prueba documental, por parte de Uni-Gold se presentaron los documentos siguientes: Exhibit I- Certificación Concrete Core Preparation (ASTM C42) y Compressive Strength of Concrete Coes (ASTM C39); Exhibit II- Ratificación de dominio sobre vías o calles, segregación de las mismas y traspaso y destino a uso público; Exhibit III- Plano del Proyecto Colinas de Cayey (2 páginas), y Exhibit IV- Permiso de Urbanización (OGP- 3 páginas). Mientras que, por parte del Municipio, se presentaron los siguientes: Exhibit I- Certificación del Municipio de Cayey del 9 de abril de 2023 (1 página y 2 páginas con fotos), y Exhibit II- Certificación del Municipio de Cayey del 11 de enero de 2024 (1 página y 5 páginas con fotos).

Producto de la vista, el 26 de septiembre de 2025, notificada el 2 de octubre del mismo año, se emitió la *Sentencia* objeto de revisión.[22] Como parte de este dictamen, el tribunal de instancia consignó las determinaciones de hechos siguientes:

1. La parte demandante cumplió con lo acordado en la Vista Celebrada el 10 de febrero de 2017.

2. Las partes acordaron que las calles del Proyecto Colinas de Cayey ser[í]an en hormigón con un espesor de 5 pulgadas y con una resistencia de 4,000 PSI.

3. El informe realizado por Jaca & Sierra encontró que el espesor excede las 5 pulgadas y la resistencia es de 4,900 PSI.

4. A las calles en el Proyecto se les aplic[ó] una fina capa de asfalto.

5. Hay calles en el Proyecto que requieren ser reparadas.

---

[21] Grabación de la Vista evidenciaria del 27 de noviembre de 2024.
[22] SUMAC TA, a la Entrada Núm. 1, Apéndice 2.

6. El Municipio realiza actos similares en avenidas. Aplica capas de asfalto a calles que son de hormigón. [23]

En mérito de las referidas determinaciones, el tribunal *a quo* concluyó que quedó demostrado que las calles del Proyecto Colinas de Cayey estaban hechas en hormigón con métricas que excedían lo acordado por las partes en la Vista del 10 de febrero de 2017. Por otro lado, el foro de instancia no encontró razón para considerar que el colocar una capa de asfalto sobre una loza de hormigón, como una razón de incumplimiento. Ahora bien, indicó que de la prueba quedó claro la necesidad de reparar las calles en el Proyecto, lo cual correspondía a Uni-Gold. A tenor, ordenó a Uni-Gold a realizar las reparaciones necesarias a las calles del Proyecto en un término de noventa (90) días, la cuales no conllevarían el volver a hacer las calles en hormigón. Una vez realizadas las reparaciones, el Municipio debía, en un término de treinta (30) días, realizar todas las gestiones requeridas, para poder efectuar el trámite de traspaso y destino a uso público de las calles ubicadas en el referido proyecto.

Inconforme, el 1 de diciembre de 2025, el Municipio acudió ante esta Curia mediante el presente recurso, en el cual planteó el señalamiento de error siguiente:

**Primer Error:** Erró el Tribunal de Primera Instancia al concluir que Unigold no incumplió con los términos pactados a pesar de que la evidencia presentada y determinada por el Tribunal establece lo contrario.

Mediante *Resolución* emitida el 19 diciembre de 2025, concedimos a la parte apelada hasta el 16 de enero de 2026 para para expresarse en torno al recurso. Luego, a solicitud de la parte apelada, le concedimos una prórroga hasta el 26 de enero de 2026, para presentar su alegato en oposición al recurso.

Posteriormente, mediante *Resolución* del 22 de enero de 2026, ordenamos a la primera instancia judicial a remitirnos los autos originales de los expedientes judiciales G DP2015-0147 y G PE2015-

---

[23] SUMAC TA, a la Entrada Núm. 1, Apéndice 2, pág. 2.

0128, relacionados al recurso de epígrafe, así como el enlace con la regrabación de las vistas celebradas el 10 de febrero de 2017 y 27 de noviembre de 2024. El foro primario cumplió con ambas órdenes.

El 26 de enero de 2026, compareció la parte apelada mediante *Alegato de la parte apelada.* Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

II

### A. La Apreciación de la Prueba y Deferencia Judicial

Como es sabido, tanto el ejercicio discrecional de apreciación de la prueba que efectúa el Tribunal de Primera Instancia como las determinaciones de hecho que establece están revestidas de confiabilidad y merecen gran deferencia.[24] Ello, toda vez que es el foro primario quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[25] Esto, al contrario del Tribunal de Apelaciones, quien cuenta únicamente con récords mudos e inexpresivos.[26] Así, pues, en nuestro sistema de justicia, la discreción judicial permea la evaluación de la prueba presentada en los casos y controversias.[27]

Por lo anterior, conviene mencionar que las decisiones discrecionales que toma el foro primario no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[28] Un tribunal de justicia incurre en un abuso de discreción cuando el juez, sin fundamento para ello: (i) no toma en cuenta e ignora en la decisión que emite un hecho material importante que no podía ser pasado por alto; (ii) concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o (iii) no toma

---

[24] *Trinidad v. Chade,* 153 DPR 280, 291 (2001), citando a *Pueblo v. Torres Rivera,* 137 DPR 630 (1994).
[25] *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021); *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 142 (2013).
[26] *S.L.G. Rivera Carrasquillo v. A.A.A,* 177 DPR 345, 356 (2009); *Trinidad v. Chade,* supra, a la pág. 291.
[27] *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011).
[28] *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434 (2013).

en cuenta todos los hechos materiales e importantes, descarta los relevantes, así como los sopesa y calibra livianamente.[29]

Como corolario de lo anterior, nuestro Tribunal Supremo ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[30] Se ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala, e incluso antes de que se someta prueba alguna.[31] Con relación al error manifiesto, un juzgador incurre en este cuando, de un análisis de la totalidad de la evidencia, este Tribunal de Apelaciones queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[32] Igualmente, se podrá intervenir con la determinación del tribunal de instancia cuando la valoración de la prueba se aparte de la realidad fáctica o resulte inherentemente imposible o increíble.[33]

No obstante, lo anterior, cabe destacar que, el Alto Foro ha resuelto que, en instancias en las cuales las determinaciones de hecho que realice el foro primario estén basadas en prueba pericial o documental, el tribunal revisor estará en la misma posición para revisar la prueba.[34] Por tanto, en dichas instancias, este tribunal apelativo "tendrá la facultad para adoptar su propio criterio en la

---

[29] *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).
[30] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994); *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).
[31] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).
[32] *Dávila Nieves v. Meléndez Marín,* supra, a la pág. 772.
[33] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219; *González Hernández v. González Hernández,* supra, a la pág. 777.
[34] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219.

apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta".[35]

Huelga señalar que, aunque según vimos, la apreciación de la prueba no está exenta de toda revisión, si la actuación del tribunal de instancia no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio de este foro, que es a quien corresponde la dirección del proceso.[36] Por ende, los foros apelativos solo podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que de esta surjan serias dudas, razonables y fundadas. Ahora bien, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo.[37]

### III

En el recurso de apelación ante la consideración de este Tribunal, el Municipio, en su único señalamiento de error, esboza, en síntesis, que el foro de instancia incidió al concluir que Uni-Gold no cumplió con los términos pactados, pese a que la evidencia presentada y la determinada por el Tribunal estableció lo contrario.

Según reseñamos previamente, luego de una década de litigio, se celebró la vista evidenciaría en la cual se concluyó que la única controversia pendiente, en este caso, era verificar el cumplimiento con los acuerdos a los que las partes llegaron durante una vista celebrada allá para el 10 de febrero de 2017. De entrada, conviene precisar que de los autos se desprende que no existe controversia sobre el hecho de que las partes hubiesen llegado a tales acuerdos durante la mencionada vista. Por otro lado, amerita puntualizar que la controversia pendiente en este caso se limitaba a disponer si se incumplieron o no los referidos acuerdos. Ahora bien, de los autos

---

[35] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219*; Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 363 (2001); *Prieto v. Mary land Casualty Co.*, 98 DPR 594, 623 (1970).
[36] S*ierra v. Tribunal Superior*, supra, a la pág. 572.
[37] *Rivera Pérez v. Cruz Corchado*, supra, a la pág. 14.

ante nos, pero sobre todo de la vista celebrada, se desprende que las partes limitaron sus testimonios para que el foro de instancia dispusiera si se había cumplido o incumplido con el siguiente acuerdo:

> [L]as calles del proyecto serán de hormigón y tendrá un espesor de 5 pulgadas. Será un hormigón de 4,000 PSI, no requerirá ningún aditivo especial[.]

Conforme adelantamos, en la referida vista, por parte de Uni-Gold se presentó el testimonio del Ing. Oquendo y el del señor Ortiz. Mientras que, por parte del Municipio, se presentó el testimonio del Ing. Rodríguez. Tanto el Ing. Oquendo como el señor Ortiz explicaron que las calles del Proyecto Colinas de Cayey se diseñaron originalmente en asfalto, pero luego, a requerimiento del Municipio, se hizo una enmienda para cambiar el diseño en hormigón, y así se construyó.[38] Particularmente, el Ing. Oquendo, quien estuvo a cargo de supervisar la construcción de las calles, explicó que las calles actualmente eran de hormigón y únicamente tenían una capa de asfalto a los fines de estética y para evitar que en un futuro hubiese hongo que se le pegara.[39] Incluso, acotó que, si a las calles no se le colocaba esa capa de pavimento, entonces el Municipio tendría que estar limpiando las calles todo el tiempo, por lo que era más práctico.[40] Particularmente, acentuó que tomaron la determinación de hacer la capa de asfalto cuando comenzaron a ver unas acumulaciones de aguas.[41] Así, pues, se determinó tirar asfalto encima del hormigón para corregir el problema y que se vieran las calles más elegantes.[42]

Por otra parte, al confrontar al Ing. Oquendo con el Exhibit 1 de Uni-Gold, indicó que este era una certificación para comprobar

---

[38] Grabación de la Vista evidenciaria del 27 de noviembre de 2024, Interrogatorio directo del Ing. Oquendo y Contrainterrogatorio del señor Ortiz.
[39] Grabación de la Vista evidenciaria del 27 de noviembre de 2024, Interrogatorio directo del Ing. Oquendo.
[40] *Íd.*
[41] *Íd.*, Contrainterrogatorio del Ing. Oquendo.
[42] *Íd.*

cuál fue la construcción que se realizó en las calles. Subrayó que esta certificación indicaba que, tal como se requirió por parte del Municipio, las carreteras del Proyecto eran de un hormigón de 4,000 PSI con un espesor de 5 pulgadas, sin ningún aditivo especial.[43] Específicamente, puntualizó que en la segunda página de la certificación el hormigón de las calles del Proyecto dio 4,900 PSI, y el mínimo requerido por el Municipio era 4,000 PSI.[44] Más adelante en la vista, el testigo del Municipio, el Ing. Rodríguez, explicó que la cuestión de los aditivos se refería al aditivo químico retardante de fraguado.[45]

Por su parte, el segundo testigo de Uni-Gold, el señor Ortiz, desarrollador del proyecto, en lo pertinente, admitió que el Municipio no se ha expresado en cuanto a si estaba prohibido echarles asfalto a las calles de hormigón, sin embargo, destacó que esta es una práctica típica del Municipio.[46] Resaltó que había observado este proceder en varias avenidas del referido municipio, las cuales eran de hormigón, pero están cubiertas con asfalto.[47] De otro lado, a preguntas de si era posible remover la capa de asfalto, manifestó que removerla podría dañar el hormigón, ya que habría demoler, disponer, preparar y volver a tirar, lo cual tendría el costo aproximado de $250,000 a $350,000 dólares.[48]

En lo referente al testimonio del testigo del Municipio, el Ing. Rodríguez, director de la oficina de ingeniería y permisos, huelga destacar que, aunque este alegó que el Municipio nunca autorizó que las calles tuviesen una capa de asfalto, este, por otro lado, admitió que las calles del Proyecto Colinas de Cayey fueron construidas en hormigón, y que para tirar la capa de asfalto no se

---

[43] Grabación de la Vista evidenciaria del 27 de noviembre de 2024, Interrogatorio directo del Ing. Oquendo.
[44] *Íd.*
[45] *Íd.*, Contrainterrogatorio del Ing. Rodríguez.
[46] *Íd.*, Interrogatorio directo del señor Ortiz.
[47] *Íd.*
[48] *Íd.*

requería pedir autorización de la OGPe.[49] Igualmente, admitió que algunas calles en el municipio de Cayey se le ha tirado asfalto encima a la de hormigón.[50]

Por todo lo antes expuesto, coincidimos con el tribunal de instancia en cuanto a que no existe motivo para considerar que el colocar una capa de asfalto sobre una loza de hormigón sea razón de incumplimiento. Más aún, cuando ni de prueba admitida ni de los acuerdos vertidos por las partes en la vista del 10 de febrero de 2017, no se desprende que existiera una prohibición a colocar una capa de asfalto encima del hormigón. De otro lado, quedó meridianamente claro que, conforme a la prueba desfilada y a lo determinado por el foro *a quo*, las calles fueron construidas en hormigón, en cumplimiento con lo requerido, *ergo*, no hubo incumplimiento con el único acuerdo en controversia.

Es harto conocido, que esta Curia no debe sustituir el criterio del tribunal de instancia a menos que se demuestre que están presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[51] Así, pues, si la actuación del tribunal de instancia no está desprovista de bases razonables, ni perjudica los derechos sustanciales de alguna de las partes, debe prevalecer el criterio de este foro.[52]

Luego de haber estudiado minuciosamente la totalidad de los autos ante nuestra consideración, incluyendo los autos ante el TPI, las grabaciones de las vistas celebradas, según fueron requeridas, las posiciones de las partes, el error alzado por el Municipio, así como el derecho aplicable, forzosamente concluimos que no se

---

[49] Grabación de la Vista evidenciaria del 27 de noviembre de 2024, Contrainterrogatorio del Ing. Rodríguez.
[50] *Íd.*
[51] *Coop. Seguros Múltiples de P.R. v. Lugo*, supra, a la pág. 208; *Rivera Pérez v. Cruz Corchado*, supra, a la pág. 14; *Sierra v. Tribunal Superior*, supra, a la pág. 572.
[52] S*ierra v. Tribunal Superior*, supra, a la pág. 572.

justifica variar lo actuado por el foro de instancia. El error esgrimido no fue cometido, por lo que procede confirmar la *Sentencia* apelada.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones