Brau Ramírez, Juez Ponente
*669 TEXTO COMPLETO DE LA SENTENCIA
I
La parte apelante, el Estado Libre Asociado de Puerto Rico f'W E.L.A."), solicita la modificación de la sentencia dictada el 20 de agosto de 1996 por el Tribunal de Primera Instancia, Sala Superior de Guayama, declarando con lugar la demanda de daños y perjuicios presentada contra del E.L.A por las apeladas, Carmen Colón y Eileen Ramírez Colón. La demanda estaba basada en un accidente ocurrido el 2 de abril de 1991 en la Carretera PR-7722 en el tramo que conduce de Cayey a Aibonito, en el cual perdió la vida el joven Paul Héctor Ramírez Colón, bijo y hermano, respectivamente, de las apeladas, cuyo vehículo se despeñó por un precipicio existente en el lugar.
El Tribunal determinó que la muerte de Paul fue resultado de la inexistencia de una valla de seguridad en el borde del referido precipicio. Condenó al E.L.A. a satisfacer a las apeladas las siguientes cuantías: a Eileen Ramírez Colón $25,000.00 en pago de sus daños morales; a Carmen Colón $15,000.00 por concepto de daños morales, y $110,000.00 por concepto de lucro cesante.
Modificamos la sentencia apelada para reducir las cuantías concedidas a las apeladas.
II
Según surge del récord, para el año 1991 el joven Ramírez Colón vivía con su madre la Sra. Carmen Colón en la Urb. Country Club de Río Piedras. Estaba próximo a graduarse de bachiller en Educación Física de la Universidad de Puerto Rico, Recinto de Río Piedras.
Para esa fecha, el joven Ramírez Colón trabajaba como preparador físico para Los Polluelos de Aibonito, equipo de la Liga de Baloncesto Superior de Puerto Rico. También se desempeñaba como entrenador para el Colegio Nuestra Señora del Carmen en Trujillo Alto, Puerto Rico, y trabajaba para la Universidad de Puerto Rico en el Programa de Estudio y Trabajo. El joven Ramírez Colón devengaba salarios por todos estos servicios.
Para combinar sus estudios y trabajos, el joven Ramírez Colón estudiaba los lunes y miércoles desde las 7:00 a.m. Por las tardes, trabajaba en el Colegio Nuestra Señora del Carmen y en las noches se trasladaba a Aibonito para trabajar con Los Polluelos.
Para la fecha de los hechos, hacía aproximadamente tres semanas que el joven Ramírez Colón había venido viajando de noche por la Carretera PR-7722, para llegar a Aibonito. Dicha carretera forma parte de la denominada "Ruta Panorámica" y es una vía estadual principal bajo el control exclusivo del Departamento de Transportación y Obras Públicas. La misma discurre por el área montañosa de la Isla y su vía de rodaje es tortuosa, además de altamente propensa a la ocurrencia de neblina.
El 2 de abril de 1991, el joven Ramírez Colón llegó a su casa las 4:00 p.m. Se tomó un vaso de leche, se despidió de su mamá y salió rumbo a Aibonito para una práctica que había programada.
Generalmente, el joven Ramírez Colón regresaba a su casa a eso de las 11:00 a 11:15 de la noche. Ese día, no regresó a esa hora. Al ver que no llegaba, la Sra. Colón se preocupó y llamó a su hija Eileen. Esta se comunicó al Cuartel de la Policía de Aibonito, a los hospitales cercanos y con varios miembros del equipo de Los Polluelos. Sus gestiones para localizar a su hermano fueron infructuosas.
Al siguiente día, desde la casa de la Sra. Colón, Eileen se comunicó con un amigo de la familia, el Sr. Alfredo Herrera, quien salió hacia Aibonito para ver si localizaba al joven Ramírez Colón.
A eso de la 1:00 ó 1:30 p.m. la Sra. Colón y Eileen, todavía sin noticias de Paul, decidieron salir rumbo a Aibonito junto a una amiga. Tomaron la Carretera PR-7722. Condujeron hasta el Km. 3.8 de la carretera, el cual queda en la jurisdicción de Cayey.
En ese punto, la vía de rodaje consiste de una pendiente recta de cuatro metros de altura seguida inmediatamente de una curva cerrada que desemboca abruptamente a otra pendiente recta. Contiguo al carril derecho hay un precipicio de aproximadamente cien (100) pies de profundidad. La curva está *670 separada del barranco por un área verde de 20 pies de ancho. No hay iluminación ni barreras o vallas de seguridad al borde del precipicio. Ese día había llovido.
Al llegar al lugar las apeladas vieron la parrilla de un automóvil, que reconocieron como la del automóvil del joven Ramírez Colón, y se detuvieron. Posteriormente, acudieron al lugar algunos agentes de la policía, residentes del sector y miembros de Los Polluelos, además del hermano de la Sra. Colón. Después de un rato, algunas de las personas bajaron al precipicio. Allí encontraron el vehículo marca Ford, modelo Thunderbird de 1987 del joven Ramírez Colón. Dentro del vehículo hallaron el cadáver de éste.
La policía tomó fotos y medidas del lugar del accidente. No había huellas o marcas de frenazos en el pavimento. Se ocupó el automóvil para su posterior inspección.
Con la anuencia del fiscal asignado, el cadáver del joven Ramírez Colón fue levantado y trasladado al Instituto de Ciencias Forenses en Río Piedras para practicarle la autopsia y los exámenes de rigor. La autopsia reveló que el joven Ramírez Colón murió a causa de un severo trauma cráneo-cervical. Reflejó además que el joven no conducía bajo los efectos de alcohol o drogas.
La inspección del auto indicó que tanto el sistema de frenos como el de conducción del auto ' estaban en buenas condiciones.
En su informe, la policía concluyó que el joven Ramírez Colón conducía a exceso de velocidad y que por ello perdió el control del volante saliéndose de la vía de rodaje.
Así las cosas, las apeladas presentaron la demanda de epígrafe contra el E.L.A. Alegaron que el accidente se había debido a la negligencia del Estado al no proveer una valla de seguridad ni haber colocado rótulos que anunciaran la existencia de una curva peligrosa. El E.L.A. contestó la demanda, negando las alegaciones.
Luego de otros incidentes procesales, se celebró la vista en su fondo el 6 de febrero de 1996. En ella testificaron las apeladas la Sra. Carmen Colón, y Eileen Ramírez Colón y, como peritos, el Ing. Rafael Dávila Siaca y el economista Antonio J. González. El E.L.A. presentó como testigos a la Dra. Lyvia Rivera, Patóloga Forense y al Sr. José Aguayo, Perito en Reconstrucción de Accidentes.
Según surge de la exposición narrativa de la prueba, la Sra. Colón testificó en tomo a los detalles de la salida del joven Ramírez Colón de su casa el día del accidente, la búsqueda emprendida por ella y su hija y la localización del cadáver al día siguiente. Expresó que se había afectado bastante por la pérdida de su hijo, que había hecho una reclamación en la Administración de Compensación por Accidentes de Automóviles (A.C.A.A.) y que le habían concedido la suma $10,000.00. Para ello, había tenido que establecer que era dependiente del joven Ramírez Colón.
En el contrainterrogatorio indicó que el joven Ramírez Colón llevaba tres (3) semanas trabajando en Aibonito.
El testimonio de la apelada Eileen Ramírez Colón fue similar al de su señora madre. Además, testificó que había sido muy apegada y unida a su hermano el joven Ramírez Colón, y que ella lo acompañaba a muchas actividades junto a sus hijos. Declaró que debido a la diferencia de edad de 16 años entre ellos, ella era como la madre del joven Ramírez Colón en muchos aspectos.
En su turno el Sr. Dávila Siaca atestó que en los planos de la Carretera PR-7722 estaba contemplada la instalación de barreras en el Km. 3.8, las cuales, sin embargo, no se habían llegado a instalar. Describió el lugar del accidente como una curva que discurre de Sur a Norte y que es aguda. Señaló que en ese sitio en particular, y por la condición de ser una caída abrupta, se debía colocar una barrera de seguridad desde que se construyó la carretera.
Opinó que la ausencia de barreras fue el "nexo causal" que provocó el accidente. No obstante, aclaró que no había verificado la ocurrencia de otros accidentes en el lugar. También admitió que no existía forma de determinar la velocidad a la que viajaba el joven Ramírez Colón al momento del *671 accidente.
En cuanto al cálculo de indemnización por lucro cesante, el Sr. González declaró que la madre del joven Ramírez Colón sufriría una pérdida económica, como dependiente de éste. Para calcular esta cantidad, el testigo determinó que la vida productiva del joven Ramírez Colón era de treintiocho (38) años. Determinó, además, que los ingresos anuales del joven, con sus respectivos aumentos, bonos e ingresos adicionales, ascendían a $17,710.00 y los trajo a valor presente la indemnización multiplicándolas por 14.8461, el valor actuarial correspondiente para la expectativa de vida productiva del joven, para un total de $262,924.43. Restada una tercera parte (por los gastos del occiso) dicha suma ascendía a $175,823.00.
La Dra. Rivera testificó que el joven Ramírez Colón falleció por un severo trauma cráneo-cervical que le ocasionó la muerte inmediata. Concluyó que el joven Ramírez Colón no tenía puesto el cinturón de seguridad debido a la ausencia de marcas en la pelvis. Señaló que las pruebas toxicológicas hechas al cadáver habían arrojado resultados negativos para alcohol, cocaína y marihuana.
El Sr. Aguayo declaró que, según su criterio, no era posible establecer relación causal entre el accidente y la condición de la carretera. Tampoco había forma de determinar dónde comenzó el accidente con la evidencia física existente. No hay forma de reconstmir el accidente. Opinó que "si es una persona conocedora de la ruta tuvo que haber otro elemento en la recta que antecede la curva tuvo que haber descontrol, pero no se puede precisar".
El 20 de agosto de 1996 el Tribunal dictó sentencia declarando con lugar la demanda. El Tribunal concedió credibilidad a la versión de la parte apelada de que el accidente se había debido a la falta una valla en el borde de la carretera. Descartó el testimonio del perito presentado por el Estado. Condenó al E.L.A. a pagar a las apeladas las sumas mencionadas anteriormente, acogiendo el cómputo de lucro cesante propuesto por el perito de las apeladas. 
Insatisfecho, el E.L.A. acudió ante este Tribunal.
III
En su recurso, el E.L.A. no cuestiona la determinación de imputarle responsabilidad al Estado por el accidente. Alega, sin embargo, que erró el Tribunal al no imponerle porciento alguno de negligencia comparada al causante y en el cómputo de la partida de lucro cesante a favor de la Sra. Colón, la cual fue calculada la expectativa de vida del causante y no la de su madre.
El artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3141, establece que aquél que por acción u omisión, causa daño a otro, interviniendo culpa o negligencia, es responsable de resarcir el daño causado. Se requiere que en efecto se haya sufrido un daño, mediando culpa o negligencia, y la existencia de un nexo causal entre el daño y la negligencia. Monllor Arzola v. Sociedad Legal de Gananciales, _ D.P.R. _ (1995), 95 J.T.S, 77, a la pág. 960; Vélez v. Amaro, _ D.P.R. _ (1995), 95 J.T.S. 38, a la pág. 756; Arroyo v. E.L.A.,_D.P.R._(1990), 90 J.T.S. 101, a la pág. 7,935.
La negligencia se define como la omisión de desplegar la diligencia requerida por la naturaleza de las circunstancias. En ausencia de una expresión sobre la diligencia debida en determinada situación, se requiere aquella que corresponde a un buen padre de familia. Artículo 1057 Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3021.
El Tribunal Supremo de Puerto Rico ha observado que una omisión genera responsabilidad civil "si constituye conducta ilícita imputable. Es decir, si la omisión del alegado causante de un daño quebrantó un deber impuesto o reconocido por ley, un deber que éste debe ejercer como lo haría un hombre prudente y razonable, con aquel grado de cuidado, diligencia, vigilancia y precaución que las circunstancias exigen." Monllor Arzola v. Sociedad Legal de Gananciales, 95 J.T.S. a la pág. 960.
La última oración del artículo 1802 recoge el principio de la doctrina de la negligencia comparada. Esta doctrina se utiliza para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, *672 pero no lo exime totalmente de su responsabilidad. H. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, 2da ed., San Juan, Publicaciones J.T.S., 1986, pág. 410; Vélez v. Amaro, 95 J.T.S. 38, a la pág. 758; Miranda v. Estado Libre Asociado, _ D.P.R. _ (1994), 94 J.T.S. 152, a la pág. 525.
Por su parte, el art. 404 del Código Político de Puerto Rico, 3 L.P.R.A. see. 422, establece la responsabilidad del Estado Libre Asociado por daños y perjuicios ocasionados a las personas o propiedades por desperfectos, falta de reparación o protección suficientes para el viajero en cualquier vía de comunicación perteneciente al E.L.A. y a cargo del Departamento de Transportación y Obras Públicas, excepto que se pruebe que los desperfectos fueron ocasionados por la violencia de los elementos y no hubo tiempo para remediarlos.
El precepto en cuestión, sin embargo, no convierte al Estado en un garantizador absoluto de la seguridad de las personas que utilizan las carreteras públicas. El mismo se nutre de los elementos preceptuados en el art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5141. Rivera Jiménez v. Garrido & Company, Inc. , _ D.P.R. _ (1993), 93 J.T.S. 158, a la pág. 11,329; Dones Jiménez v. Autoridad de Carreteras, _ D.P.R. _ (1992), 92 J.T.S. 30, a la pág. 9,325; Publio Díaz v. E.L.A., 106 D.P.R. 854, 867 (1978).
No se exige que todas las vías de comunicación estén en perfectas condiciones. El Estado no responde por todo riesgo imaginable o desperfectos, sino los razonablemente predecibles y anticipates. Rivera Jiménez v. Garrido & Company, Inc., 93 J.T.S. 158, a las págs. 11,331-2; véase, además, Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702, 708-709 (1990). Tampoco se excluye la aplicación, en circunstancias apropiadas, de la negligencia comparada o imputación total de negligencia al conductor. Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. a la pág. 709; Publio Díaz v. E.L.A., 106 D.P.R. a la pág. 863.
La responsabilidad por omisión al amparo del Art. 404 requiere la existencia de un deber jurídico de actuar que de haberse realizado el acto omitido se hubiera evitado el daño. Rivera v. Garrido, _ D.P.R. _ (1993), 93 J.T.S. 158, a la pág. 11,332.
Al igual que en el Art. 1802 el elemento de relación causal se rige por la teoría de la causalidad adecuada, con arreglo a la cual no se considera "causa" toda condición sin la cual no se hubiera producido el resultado, sino aquella que ordinariamente lo produce, según la experiencia general. Torres Maldonado v. J.C. Penney Company, 92 J.T.S. a la pág. 9,513; Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. a la pág. 710.
En la situación de autos, el E.L.A. alega que el Tribunal erró al no imponerle un porciento de negligencia comparada al joven Ramírez Colón. Sostiene que debe inferirse que el joven Ramírez Colón no ejerció las debidas precauciones al transitar por el lugar ya que él había venido transitando por la referida vía de noche por varias semanas sin confrontar problemas, así como lo hacían otros ciudadanos. El E.L.A. también señala que, si el joven Ramírez hubiera venido conduciendo a una velocidad moderada, el área verde existente entre la curva y el precipicio le hubiera provisto de suficiente espacio para maniobrar, en caso de haber perdido el control en la curva.
El E.L.A. aduce que no hay base para concluir que el lugar del accidente fuera uno inherentemente peligroso, ni la existencia de un número significativo de accidentes que justificara la instalación de vallas. Apunta, similarmente, a la conclusión de la patóloga, de que el causante no estaba usando su cinturón de seguridad al momento del accidente.
Es norma establecida que, de ordinario, los foros apelativos no intervendrán con las determinaciones de hechos y la adjudicación de credibilidad hecha por los tribunales de primera instancia, a menos que existan circunstancias extraordinarias, error manifiesto, pasión, prejuicio o parcialidad. Méndez de Rodríguez v. Morales Molina y otros, _ D.P.R. _ (1996), 96 J.T.S. 149, a la pág. 347; Cándido Oliveras, Inc. v. Universal Insurance Company, _ D.P.R. _ (1996), 96 J.T.S. 145, a la pág. 298; Pérez Marrero v. Colegio de Cirujanos Dentistas, _ D.P.R. _ (1992), 92 J.T.S. 124, a la pág. 9,943; Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.2. No obstante, el arbitrio del juzgador de hechos no es absoluto ni goza una apreciación errónea de la prueba de credenciales de inmunidad *673 frente a la función revisora de este Tribunal. Véanse, Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Vélez v. Srio. de Justicia, 115 D.P.R. 533, 545 (1984); Vda. de Morales v. De Jesús Toro, 107 D.P.R. 826, 829 (1978).
A nuestro juicio, la prueba desfilada ante el Tribunal de Primera Instancia tiende a indicar que la mayor parte de la responsabilidad por el accidente debe ser atribuida al joven Ramírez Colón. En efecto, el Tribunal de Primera Instancia no tuvo ante sí prueba específica alguna sobre los detalles de cómo ocurrió el accidente. Claramente, el joven Ramírez Colón venía conduciendo su vehículo cuando, inexplicablemente, éste perdió el control y se despeñó por el precipicio.
No existe evidencia que el automóvil del joven Ramírez Colón hubiera sido empujado fuera de la carretera por la negligencia de otro conductor. No existen huellas de frenazos en la carretera. No existe prueba de que hubieran mediado condiciones de tiempo extraordinarias o anormales. No existe evidencia de que existiera en el área de rodaje algún agujero, agrietamiento u otro desperfecto susceptible de provocar la pérdida de control del automóvil. El joven Ramírez Colón conocía la carretera, pues había transitado por allí en otras ocasiones sin experimentar problemas. En estas circunstancias, opinamos que la única explicación razonable para la pérdida de control del vehículo es que esto ocurrió por la negligencia del propio joven Ramírez Colón, quien resulta, de este modo, el responsable en su mayor parte del accidente.
En efecto, no se trata de una situación donde pueda aplicarse la doctrina de res ipsa loquitur. Véanse, Marrero Ríos v. Albany Ins. Co., 124 D.P.R. 827, 831 (1989); Nieves López v. Rexach Bonet, 124 D.P.R. 427, 437 (1989); véase, además, Díaz v. E.L.A., 118 D.P.R. 395, 406-407 (opinión concurrente del Juez Asociado Negrón García a la que se unieron los Jueces Asociados Hernández Denton y Alonso Alonso). El peso de la prueba correspondía a la parte apelada para establecer que el accidente fue atribuible a la negligencia del Estado. A pesar de que no existe prueba sobre cómo se produjo la caída del vehículo, el Tribunal interpretó esta insuficiencia de forma contraria al Estado, imponiéndole a éste responsabilidad por la totalidad de los daños ocasionados. Aunque no revocamos la determinación de responsabilidad del Estado, ni así se nos solicita, estimamos que cualquier insuficiencia en el récord debe ser adjudicada en contra de la parte apelada.
Según se conoce, el Estado no tiene la responsabilidad de colocar vallas en todas las carreteras. Rivera v. Garrido, _ D.P.R. _ (1993), 93 J.T.S. 158, a la pág. 11,331. Según hemos indicado, a base del récord ante nos, es inferible que la pérdida de control del vehículo del causante se debiera a la propia negligencia de éste (posiblemente porque se había dormido al volante). La prueba reflejó, además, que el causante probablemente no estaba utilizando el cinturón de seguridad. Canales Velázquez v. Rosario, 107 D.P.R. 757, 771-772 (1978). En estas circunstancias, estimamos razonable la imposición al occiso de una responsabilidad de 60% de los daños ocasionados. Miranda v. E.L.A., 94 J.T.S. a la pág. 525; compárese el caso de autos a la situación en Díaz v. E.L.A., 118 D.P.R. 395.
El Estado cuestiona también los daños concedidos a las apeladas.
La estimación del dolor físico y el sufrimiento mental descansa en la discreción del tribunal sentenciador. Su determinación ha de estar presidida por una sana reflexión y una evaluación. Por lo cual, de ordinario, su determinación será respetada a menos que sea una suma exageradamente alta o muy baja. Vázquez v. F.W. Woolworth & Co., _ D.P.R. _ (1997), 97 J.T.S. 56, a la pág. 591; Toro Aponte v. Estado Libre Asociado de Puerto Rico, _ D.P.R. _ (1997), 97 J.T.S. 18, a la pág. 628; López v. Manzano Pozas, _ D.P.R. _ (1996), 96 J.T.S. 95 a la pág. 1,315; Hawayek v. A.F.F., 123 D.P.R. 526, 535 (1989).
El E.L.A. cuestiona tanto la adjudicación de la partida de lucro cesante como su cálculo. Alega que en la vista en su fondo no desfiló prueba sobre la relación de dependencia económica entre la Sra. Colón y el joven Ramírez Colón y que ésta recibe beneficios por Seguro Social. Señala, además, que aún de proceder, el lucro cesante debió ser calculado utilizando la expectativa de vida de la Sra. Colón Carmen y no la vida útil del joven Ramírez Colón.
El lucro cesante es definido como la interrupción, disminución o cese en los ingresos de una persona o sus causahabientes debido a que otra, mediante un acto culposo o negligente, ocasionó la *674 pérdida, total o parcial, de su capacidad productiva. Díaz v. Alcalá, _ D.P.R. _ (1996), 96 J.T.S. 79, a la pág. 119. Es un daño especial. Ortiz v. Díaz, _ D.P.R. _ (1992), 92 J.T.S. 140.
Su propósito es indemnizar al incapacitado o a los beneficiarios de un occiso con una suma que invertida razonablemente produzca, durante un período de tiempo igual a la expectativa de vida del incapacitado, o del occiso o sus beneficiarios, según sea el caso, los ingresos que éste hubiese recibido de no haber ocurrido el accidente. Herminio Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, Publicaciones J.T.S., 1986, San Juan, Vol. II, pág. 487.
El lucro cesante resultante de la muerte de una persona se calcula tomando en consideración los ingresos del fallecido, sus gastos personales, su edad y estado de salud, y su consecuente expectativa de vida, la edad, estado de salud y consecuente expectativa de vida de éstos y todas las circunstancias que sean relevantes a la justa determinación de dicha partida. Herminio Brau del Toro, supra, a la pág. 482. Hay que tomar en cuenta la productividad y expectativa de la vida de la víctima y del beneficiario que le sobrevive, limitando la indemnización que le corresponde en proporción a su expectativa de vida. Véase, Zeno Molina v. Vázquez Rosario, 106 D.P.R. 324, 328 (1977).
En estas situaciones el concepto de lucro cesante está inexorablemente relacionado al de dependencia económica al momento de la muerte. Zurkowsky v. Honeywell, Inc., 112 D.P.R. 271, 275 (1982); Pate v. U.S.A., 120 D.P.R. 566, 571 (1988); Herminio Brau del Toro, supra, a la pág. 489. Ausente la relación de dependencia económica los reclamantes no tienen causa de acción válida. Id.
El Tribunal no ha aclarado cómo se lleva a cabo dicha limitación; sin embargo, hay quien opina que en los casos, como el de autos, en que la expectativa de vida de los causahabientes es menor que la vida útil del occiso, debe utilizarse para el cómputo la expectativa de vida natural del causahabiente. Herminio Brau del Toro, supra, a la pág. 48283; José A. Cuevas Segarra, La Responsabilidad Civil y el Daño Extracontractual en Puerto Rico, Publicaciones J.T.S., 1993, San Juan, pág. 223.
En cuanto a la cuestión de si la Sra. Colón dependía económicamente de su hijo, de la exposición narrativa de la prueba surge que ésta no ofreció testimonio alguno sobre este particular. Sólo testificó que éste vivía en su casa y que ella había recibido beneficios de la A.C.A.A. por la muerte de su hijo por su dependencia económica. Aunque dicha prueba es escasa, estimamos que la misma no es en tal grado insuficiente que debamos concluir que la determinación del Tribunal sobre este particular fue inherentemente errónea.
Como todo padre o madre, la Sra. Colón tenía la expectativa razonable de que su hijo se hiciera cargo de ella en su vejez. Travieso v. Del Toro y Travieso, Int., 74 D.P.R. 1,009, 1,027 (1953); López v. American Railroad Co. of P.R., 50 D.P.R. 1, 27 (1936).
Ahora bien, respecto al cálculo de la partida de lucro cesante, entendemos que procede la corrección señalada por el E.L.A. utilizándose la expectativa de vida de la apelada y no la de su hijo. En su comparecencia ante este Tribunal, las apeladas han expresado su allanamiento a esta modificación del dictamen apelado. Además, la disminución en un tercio de los ingresos estimados del joven Ramírez Colón por concepto de sus gastos personales debió ser hecha antes de traer la indemnización a valor presente. Vda. de Serraballs v. Abella Hernández, 90 D.P.R. 368, 370 (1964).
A la muerte del joven Ramírez Colón, la Sra. Colón tenía 65 años por lo cual su expectativa de vida es de 23.14 años según la Tabla de Vida Abreviada para Mujeres 1990-93.
De este modo, el cálculo es el siguiente: $17,710.00 (17,710.00 *.33) (12.303379) para un total de $145,988.20. Dicha cuantía debe ser reducida en un 60%, al igual que las sumas concedidas por daños morales.
Las indemnizaciones concedidas quedarían como sigue: a) $6,000.00 a la Sra. Colón por los daños y angustias mentales sufridos y $58,395.28, por concepto de lucro cesante, para una indemnización total de $64,395.28; b) $10,000.00 a Eileen Ramírez Colón por los daños y sufrimientos mentales.
*675 Por los fundamentos expresados, se modifica la sentencia apelada para reducir las cuantías concedidas a las cantidades mencionadas. Así modificada, se confirma.
Lo pronunció y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 98 DTA 7
1. A pesar de que la cuantía de lucro cesante reconocida por el Tribunal fue de $175,823.00, concedió a las apeladas sólo $110,000.00, lo que, unido a las otras partidas, agotaba el límite de $150,000.00 establecido por Ley para este tipo de casos. 32 L.P.R.A. see. 3077.