Sociedad Legal de Gananciales compuesta por Andrés Torres Saldo y Miguelina Roche, demandantes y recurridos, *v.* Estado Libre Asociado de Puerto Rico, por su Departamento de Instrucción Pública, demandado y recurrente.

Número: R-73-87     Resuelto: 27 de mayo de 1975

*Myriam Naveira de Rodón, Procuradora General, J. F. Rodríguez Rivera, Procurador General Interino, y Héctor R. Orlandi Gómez, Ruth Tentori de Lebrón Velázquez y Justo Gorbea Varona, Procuradores Generales Auxiliares,* abogados del Estado Libre Asociado; *Wilfredo Colón Pagán,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Se trata de una demanda de daños contra el Estado Libre Asociado por los padres de un menor de ocho años de edad que al salir de la escuela José Julián Acosta de Ponce sufrió una caída que le causó la muerte. El tribunal de instancia impuso responsabilidad al Estado Libre Asociado. El Procurador General nos pide la revocación de la sentencia basándose en la insuficiencia de la prueba.

El día de los hechos a que se contrae la demanda faltó el maestro que tenía a su cargo el último período de clases. Siguiendo la norma establecida para estos casos, los niños fueron despachados acompañándolos un maestro hasta el portón, ayudándolos éste a cruzar la calle que está frente a la escuela y dejándolos en la acera que conducía a la próxima calle. El menor Andrés Torres Roche así como otros niños del mismo salón comenzaron a jugar en los terrenos contiguos a la acera de salida de la escuela.

No hay prueba de cómo ocurrió la caída del menor. El joven Hernán Nigaglioni, que ayudó a cargarlo hasta la oficina del principal, declaró que antes de que se encontrara al menor tirado en el suelo él lo había visto en la acera tambaleándose ". . . le pregunté que le pasaba y el dijo que no le pasaba nada, le pregunté que si lo llevaba a su casa y me dijo que no, entonces yo me fui. . . ." (T.E. pág. 121.) El principal de la escuela describió el estado del niño ". . . me le acerqué inmediatamente y noté que el niñito pues estaba con los ojos medio viraditos, como cuando a uno le da algún mal; noté que tenía las manos cerradas, tenía en la cara un poco de tierra; le noté que tenía la lengua pinchada entre los dientes y tenía un vidrio enterrado por la lengua que yo se lo saqué y eso quedó grabado en mi mente." (T.E. págs. 8 y 9.)

La prueba sobre las condiciones del terreno donde se encontró al menor demostró, y así lo concluyó el tribunal, que el terreno era plano, no había piedras ni escombros, estaba clara la vegetación aunque estaba bordeada por malezas. El testimonio pericial fue en el sentido de que la lesión presentada por el niño era indicativa de que éste sufrió un fuerte golpe.

No teniendo prueba directa que estableciera la relación causal entre las condiciones del terreno y la caída del menor el tribunal de instancia suplió la omisión montando la imposición de responsabilidad en meras conjeturas sobre la forma en que el niño sufrió el golpe:

"De estas circunstancias expresamente establecidas, podemos determinar que el niño sufrió el referido golpe de cualquiera de las únicas tres formas posibles que indicaremos a continuación:

a) Que haya sido lanzado al suelo al ser empujado por cualquiera de los otros niños; forma muy probable dado el hecho de que los niños se pusieron a jugar de esta manera; dicho niño tenía un peso inferior al normal en un niño de su edad y la evidencia demuestra que algunos niños eran lanzados al suelo como consecuencia de tal juego.

b) Que haya tropezado y caído; de haber sido esta la forma, lo más probable es que haya sido como consecuencia de haber tropezado con alguno de los objetos abandonados en el terreno o a consecuencia de haber caído en alguno de los hoyos que allí existían. Sin embargo, de haber recibido la referida lesión a causa de un tropezón el niño tenía necesariamente que haber caído de espaldas. Es improbable que una persona caminando o corriendo de frente caiga de espaldas a consecuencia de un tropezón.

c) Que alguna otra persona haya agredido al niño por la cabeza con cualquier objeto contundente.

De haber recibido el golpe de cualquiera de las primeras dos formas posibles que hemos expuesto anteriormente, resulta fácil determinar que el mismo no lo recibió en el sitio específico en que fue encontrado ya que en dicho sitio específico el terreno estaba libre de escombros y demás objetos, el mismo era llano y estaba claro de vegetación aunque sí estaba rodeado por bastante maleza, y sobre todo, por razón de la posición en que fue encontrado su cuerpo, o sea boca abajo y presentaba contusiones y tierra en la cara, inclusive un pedazo de vidrio incrustado en la lengua, todo ello indicativo que el niño cayó en ese sitio de frente. De haber sufrido tal golpe como consecuencia de una caída, bien sea por que lo empujaron lanzándolo al suelo o por algún tropezón, la misma tiene que haberse producido de espaldas, o sea, que el niño tuvo que haber caído de espaldas, ya que la fractura ocurrió en el hueso occipital, el cual se encuentra en la parte posterior e inferior de la cabeza. Recordemos que uno de los testigos declaró haber visto al niño antes de ser encontrado inconsciente y que cuando lo vio, este estaba tambaleándose como si estuviera mareado. Es sumamente probable que en esta ocasión ya el niño hubiera recibido el golpe y que hubiera caminado hacia el sitio donde cayó boca abajo".

■ Reconociendo las dificultades prácticas que envuelve el probar un hecho con certeza matemática, la Ley de Evidencia permite el uso de prueba indirecta, esto es, probar el hecho en controversia, probando otros distintos del cual aquél se puede lógicamente inferir. Art. 10 Ley de Evidencia, 32 L.P.R.A. sec. 1630.

■ No significa esto, sin embargo, que a guisa de inferencias o presunciones se dé por probado un hecho a base de simples conjeturas, que fue lo que en efecto hizo el tribunal de instancia.

Nótese que el tribunal de instancia partió de tres posibilidades ninguna de las cuales podía inferirse de la prueba. La posibilidad de que el niño hubiese sido lanzado al suelo al ser empujado por otros niños es completamente contraria a la prueba desfilada. Esta demostró que el niño jugaba solo separado completamente de los otros niños que jugaban entre sí empujándose. Ninguno de los otros niños vio cómo ocurrió la caída. La prueba no controvertida y a la cual el tribunal dio crédito demostró que un poco antes el menor estaba solo tambaleándose.

Igualmente es mera especulación el que el menor hubiese tropezado debido a la condición del terreno pues el propio tribunal de instancia concluyó que el sitio donde encontraron inconsciente al menor estaba libre de escombros y demás objetos.

■ Confrontándose con la inconsistencia de su propio razonamiento el tribunal acude a la posibilidad de que el niño hubiera recibido el golpe en otro sitio y que hubiera caminado hacia el sitio donde cayó. El campo de las posibilidades es siempre amplio y complaciente y por eso la mera posibilidad, a diferencia de la probabilidad, no puede servir de base para probar un hecho.

■ El proceso adjudicativo requiere mayor certeza para poder imponer responsabilidad por negligencia que la que refleja las conjeturas del tribunal de instancia.

*Se dictará sentencia revocando la recurrida.*