Aponte Jiménez, Juez Ponente
*718 TEXTO COMPLETO DE LA SENTENCIA
La Autoridad de Carreteras de Puerto Rico (en adelante "la Autoridad") nos solicita la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, mediante la cual ese tribunal declaró con lugar una causa de acción sobre daños y perjuicios presentada en su contra por la parte demandante-apelada. Por estimar que la parte demandante-apelada no demostró, por la preponderancia de la evidencia, la negligencia de la Autoridad, conforme los fundamentos que a continuación discutimos, acordamos revocar la sentencia apelada.
La demanda presentada se basó en una causa de acción al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141. Alegó, la parte demandante-apelada, entre otras cosas, que: (1) Son los dueños de un almacén de ropa ubicado en la calle 25 de Julio del municipio de Yauco; (2) El 16 de febrero de 1993 se produjeron fuertes lluvias en dicho municipio; (3) Ese día se inundó la calle penetrando las aguas hacia el interior del aludido almacén, ocasionando daños al inventario de ropa que allí se guardaba; (4) La causa de la inundación fue el puente construido por la Autoridad contiguo al almacén de los demandantes-apelados, cuya construcción se llevó a cabo para sustituir un antiguo puente de hierro "sin que se tomarán las debidas salvaguardas correspondientes para que las aguas que habrían de discurrir... fueran a provocar, como de hecho provocó, inundaciones al almacén y fábrica de los demandantes [apelados]"-, (5) La negligencia de la Autoridad consistió en no proveer al puente un "desagüe" (drenaje) lo suficientemente adecuado para evitar una inundación como la que ocurrió ese día. La Autoridad contestó la demanda. Negó todas las alegaciones, excepto aquella sobre su capacidad para demandar y ser demandada.
El tribunal a quo celebró el juicio en su fondo. Por los demandantes-apelados declararon la señora Lucila Muñiz Báez y Julio E. Geraldino Muñiz. Presentaron, además, prueba documental sobre el valor del inventario afectado. Según surge de la exposición narrativa de la prueba sometida a nuestra consideración, la señora Muñiz Báez, en síntesis, declaró lo siguiente: Que ha residido en el Núm. 5 de la calle 25 de Julio toda su vida. La planta alta de la estructura es su residencia. En la baja aloja un almacén de ropa. El 16 de febrero de 1993 se desató un fuerte y prolongado aguacero en Yauco. Cuando acudió al Núm. 5 de la 25 de Julio, notó la inundación provocada por el torrencial aguacero frente al área de su residencia y almacén. El agua penetró hacia el interior del almacén dañando el inventario que allí se encontraba. Antes de la inundación que afectó la mercancía almacenada, nunca había ocurrido una parecida. Anteriormente, había un puente de acero que fue sustituido por uno nuevo de concreto, de "mayor elevación y poco drenaje". Horas después del suceso, varios empleados del Municipio de Yauco llegaron y procedieron a destapar las "parrillas", refiriéndose al medio utilizado para poder tener acceso, desde la calle hasta la acera, a un garaje ubicado en la primera planta del edificio inundado usado para el estacionamiento de su vehículo de motor.
De otro lado, del contrainterrogatorio de esa misma testigo se desprende que, además de haberse sustituido el viejo puente de hierro por uno de concreto, el Municipio de Yauco "remodeló" la acera frente al susodicho almacén la cual se "rebaj[ó[". Asimismo, dicha testigo declaró que en la primera planta de la estructura en cuestión, aparte del almacén, ubica el garaje que utiliza para su automóvil y que con el propósito de tener acceso al mismo, ella y su esposo hicieron que se construyera e instalara una "parrilla" sobre la cuneta o zanja por donde discurre el agua a lo largo de la calle 25 de Julio. En dicha calle, a diario, "se encuentran vasos sanitarios, bolsas y papeles que la gente lanza y son arrastrados por las aguas cuando [llueve]". Admitió que la parrilla"pudiera ser un impedimento para el flujo de la basura". Desconoce si para el día de la inundación "había o no basura" porque ella "no estaba allí'. El día de los hechos observó cuando empleados municipales trabajaron en la parrilla, consiguiendo así que entonces bajara el nivel del agua y cesara la inundación.
*719 Por su parte, el co-demandante, Julio E. Geraldino Muñiz, Administrador General de la tienda de los demandantes, testificó que vive junto a sus padres en el Núm. 5 de la calle 25 de Julio. En la primera planta de la referida estructura ubica el almacén del mencionado establecimiento comercial. El 16 de febrero se dirigió hacia el almacén a buscar mercancía. Al llegar al lugar observó lo que nunca antes había ocurrido. El frente de su residencia y el almacén estaban inundados. El agua penetró hasta el interior del almacén provocando serios daños a la mercancía. Llamó al Municipio de Yauco para solicitar ayuda. Al lugar se personaron dos empleados del Departamento de Obras Públicas municipal. Limpiaron la parrilla sobre la cuneta frente al almacén, logrando así que bajara el nivel del agua y, como consecuencia, cesara la inundación. Añadió que al otro día, el Municipio envió personal. "Picaron" la acera, le pusieron una "rejilla sobre la misma para permitir que la gente caminara sobre ella e hicieron un "desagüe" a través de esa ranura". Declaró desconocer la causa de la inundación y que lo "único que le constaba de propio y personal conocimiento era el hecho de que personal del Municipio de Yauco se personó al lugar, bregó en la alcantarilla y el nivel de agua cedió".
Concluido el trámite, el tribunal declaró con lugar la demanda. Condenó a la Autoridad a pagar a la parte demandante $14,525.00 por la pérdida del inventario de ropa; $10,000.00 por los sufrimientos y angustias mentales; y $3,000.90 por concepto de honorarios de abogado. Inconforme, la Autoridad acude ante este Foro. Señala, entre otros errores, que incidió el tribunal apelado al declarar con lugar la demanda a pesar de la ausencia total de prueba para sostener las determinaciones de hecho en las cuales descansa la sentencia apelada. Ajuicio nuestro, la Autoridad tiene la razón.
Sabido es que una causa de acción sobre daños y perjuicios al amparo del Art. 1802 del Código Civil prospera sólo cuando concurren y se demuestran tres elementos o requisitos indispensables, a saber: el acto u omisión culposa o negligente del demandado, la realidad del daño experimentado por el demandante y la relación causal entre dicho acto u omisión y el daño sufrido. (Subrayado nuestro.) Toro Aponte v. E.L.A., 97 J.T.S. 18, a la pág. 627; Ortiz Torres v. K & A Developers, Inc., 94 J.T.S. 78, a la pág. 11992; Santini Rivera v. Serv. Air, Inc., 94 J.T.S. 121, a la pág. 182; Sociedad de Gananciales v. González Padín Co., 117 D.P.R. 94, 106 (1986). El acto u omisión culposa o negligente es esencialmente aquella conducta humana desprovista del cuidado o la diligencia exigible, dadas las circunstancias, a un hombre razonable. Es no prever las consecuencias lógicas de nuestras actuaciones u omisiones que una persona prudente hubiese previsto. Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 18 (1987); Torres Trumbull v. Pesquera, 97 D.P.R. 338, 343 (1969).
Por su parte, la Regla 10 (A) y (B) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10, establece que el juzgador de los hechos debe evaluar la prueba presentada a los fines de determinar los hechos probados, sujeto a los siguientes principios: El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna parte o, primordialmente, sobre la parte que sostiene la afirmativa del asunto en controversia. En ese sentido, quien reclame daños y perjuicios extracontractuales, como en toda acción civil de esa naturaleza, tiene la carga de probar mediante la preponderancia de la evidencia, de acuerdo a criterios de probabilidad, que el demandado se comportó de manera culposa o negligente. Véase, Regla 10(F) de Evidencia; Burgos Quiñones v. A.F.F., 90 D.P.R. 613, 619 (1964). Sencillamente, esa parte tiene la obligación de probar la negligencia. Brau del Toro, Herminio M., Los Daños y Perjuicios Extracontractuales en Puerto Rico, Publicaciones J.T.S., San Juan, Vol. 1, a la pág. 394. El proceso adjudicativo, no cabe duda, no puede descansar en meras conjeturas para probar la negligencia de un demandado e imponerle responsabilidad civil extracontractual. Soc. Leg. de Gan. v. E.L.A., 103 D.P.R. 876, 880 (1975).
Luego de examinar con detenimiento los testimonios vertidos en este caso, discrepamos de la determinación del tribunal apelado respecto a la negligencia de la Autoridad. A juicio nuestro, tal determinación no está sostenida por la evidencia presentada por la parte demandante. De entrada, el tribunal no hace referencia alguna a los hechos que lo condujeron a formular la adjudicación de negligencia. Se limita a describir que, en su punto más alto, el puente construido por la Autoridad es cuatro pies más alto que el punto más bajo de la calle 25 de Julio. Asimismo, describe las cunetas y los desagües construidos como drenaje del puente. Sin embargo, no determina en qué medida ese diseño del puente constituyó negligencia por parte de la Autoridad. No hay, tan siquiera, una referencia de que tal diseño no es el adecuado para la cantidad de lluvia que la Autoridad pudo haber provisto que se precipitara en el área donde se ubicó el puente. Ciertamente, no puede haber esa referencia porque no hubo evidencia sobre esos extremos. 
*720 Lo declarado por la señora Muñiz Báez no aporta evidencia alguna sobre la negligencia imputada a la Autoridad. Su testimonio, al igual que el del otro testigo, Julio E. Geraldino Muñiz, aunque acreditan el hecho de la inundación y la pérdida del inventario almacenado tuvieron la peculiaridad de establecer, de forma similar y consecuente, que la probable causa de la inundación que afectó el almacén de los demandantes fue la basura acumulada en la "parrilla" colocada por los propios demandantes-apelados sobre la cuneta frente al almacén para que su automóvil tuviese acceso al garaje de su residencia. Tanto la señora Muñiz Báez como el señor Geraldino Muñiz declararon que la inundación o nivel de agua cedió cuando empleados del Municipio de Yauco limpiaron dicha "parrilla".
No se nos escapa que los testigos declararon que antes de la construcción del nuevo puente nunca había ocurrido una inundación de la naturaleza de la ocurrida el 16 de febrero. No obstante, sería una conjetura inferir por ese hecho que la Autoridad fue negligente al construir el puente. El hecho de que antes de construir el puente no había ocurrido una inundación en el área, en nada demuestra que la Autoridad fue negligente al diseñar y construir el mismo tomando en consideración la aparente excesiva cantidad de precipitación que tuvo lugar en esa fecha. La negligencia de la Autoridad, al igual que la de cualquier demandado en una acción civil sobre responsabilidad extracontractual, no se puede presumir por el mero hecho de que la parte demandante haya sufrido un daño por causa de una inundación acaecida luego de construido el puente bajo las circunstancias concurrentes. Cf., Morales Pérez v. Clínica Femenina de P.R., 94 J.T.S. 61, a la pág. 11836. Resulta innecesario, dada la conclusión a la que hemos llegado respecto a la ausencia de prueba sobre la negligencia de la Autoridad, atender los otros errores por ésta señalados.
No habiendo la parte demandante probado el indispensable elemento o requisito de negligencia contenido en el Art. 1802, conforme lo antes expuesto, acordamos revocar la sentencia apelada y desestimar la causa de acción presentada por la parte demandante contra la Autoridad.
Lo acuerda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General